HARRY J. STOECKLE and JOSEPH STOECKLE BREWING COMPANY,

*vs.*

CAESAR H. ROSENHEIM, DAVID G. ROSENHEIM and ALBERT ROSENHEIM, trading under the firm name of H. ROSENHEIM & SON, MAX CHILINSKY and MARIA F. CHILINSKY, his wife, and WALTER S. BURRIS, Sheriff.

*New Castle, Aug. 5, 1913.*

A junior mortgagee may pay off the prior lien for his protection and be substituted for the creditor.

A demand for payment of the prior mortgage is sufficient to establish the right of redemption of the junior mortgagee, who pays the prior mortgage for his protection, without the necessity of his waiting for legal proceedings.

Where a first mortgage, which has been paid by a second mortgagee and satisfied by mistake, is thereafter reinstated, it is entitled to priority over a third mortgage, given before the satisfaction of the first, since the third mortgagee did not acquire his rights upon the credit of the satisfaction.

As a general rule, equity will not grant relief from a mistake of law; but where a person is ignorant of his legal rights, and enters into some transaction affecting such rights, equity will treat the case as analogous to a mistake of fact, and grant relief.

Where a lienholder has acquired the legal title to the property, on which there is a subsequent lien, equity will preserve the prior lien, without merger for his protection.

Where the holder of a second mortgage, who had acquired the legal title to the premises, paid the first mortgage, and secured a satisfaction of record thereof under a mistaken belief that a third mortgage had been satisfied by execution against the personal property of the debtor, and all the rights of the third mortgagee can be protected by the decree, the Chancellor will restrain foreclosure under the third mortgage, pending a proceeding by the second mortgagee to have the property sold to satisfy his mortgage, even though the true facts might have been ascertained by him from the records.

A mortgage which has been satisfied by mistake may be reinstated as a lien by a court of equity, in order to grant relief from the mistake, if no superior equities exist.

Bill to Restrain the Sale of Property Under Fore-closure Proceedings. Chilinsky being the owner of a hotel in Delaware City, on April 3, 1906, made three mortgages which obtained priority in the following order: First, to Eliza Bell Pattison, for $11,000; second, to Joseph Stoeckle Brewing Company, for $7,500; and third, to the firm of H. Rosenheim & Son, for $1,500. Then Harry J. Stoeckle, president of the company, in order to protect the second mortgage, procured from Chilinsky and wife a deed, dated July 11, 1907, conveying the premises to himself for a nominal consideration, and without having assumed to pay any debts of Chilinsky. Later, the company at the demand of the first mortgagee made several payments on account of that debt, and on March 10, 1913, paid the balance of the principal and interest due on the mortgage, and by the direction of the company the mortgagee satisfied of record the mortgage. It was shown that the money so paid in satisfaction of the mortgage was the money of the company, and was paid for the benefit of the company, the holder of the second mortgage, and without knowing, and therefore not intending, that the payment and satisfaction of it would inure to the benefit of the holder of the third mortgage. / The holders of this last mortgage in 1906 caused judgment to be entered on the bond accompanying the mortgage, and issued execution thereon, and from the sale of the personal property of Chilinsky on that execution realized about $500 on account of the debt. One of the officers of the Brewing Company, the treasurer, testified that he thought that the debt due the third mortgagee had been paid from the proceeds of that sale of the personal property. Afterwards the holders of the third mortgage brought suit in the Superior Court by *scire facias* to collect the balance of the debt due on the mortgage, obtained judgment for $1,051.03, issued a writ of *levari facias* thereon and pursuant thereto advertised the mortgaged premises to be sold on June 30, 1913.

Thereupon, on June 24, 1913, the bill was filed by Harry J. Stoeckle and Joseph Stoeckle Brewing Company against Rosenheim & Son, the plaintiff in that *scire facias*, claiming that the company was entitled to be subrogated to the rights

of the first mortgagee, and that notwithstanding the satisfaction of that mortgage, the company was entitled to have it reinstated as a lien as against the holders of the third mortgage, and to have it foreclosed in equity, alleging loss if the sale by the sheriff were not stayed.

An order was thereupon issued to restrain the sale under the *levari facias*, security having been given by the complainant, and a rule for a preliminary injunction ordered. This rule was heard on bill and oral testimony taken at the hearing by consent of the solicitors for all parties.

*Harry Emmons*, for the complainants.
*J. Harvey Whiteman*, for the defendants.

THE CHANCELLOR. The case is simply this: There were three mortgages. The second lien was held by a corporation, and the president of it, to protect the interests of the company obtained for a nominal consideration a deed conveying the mortgaged premises to himself. Then the company paid off the first mortgage, payment of it having been demanded. As a junior creditor, the company had a right to pay the prior mortgage and be substituted for the creditor. A junior mortgagee may pay the prior lien for his protection, and probably acquire an assignment of it; but whether assigned or not, it exists for the benefit of such junior mortgagee.

The principles of equitable subrogation are stated fully by Chancellor Saulsbury in *Miller v. Stout*, 5 *Del. Ch.* 259, and 1 *Jones on Mortgages*, 878. A demand for payment of the prior mortgage is sufficient to establish the right of redemption, without waiting for the taking of legal proceedings. Here instead of availing itself of this right to be subrogated to the place of the first mortgagee, the second mortgagee had the first mortgage satisfied of record. While there is no distinct allegation that the value of the mortgaged premises is less than the aggregate of the three mortgage debts, yet for the present purposes it may reasonably be so inferred from the allegation in the bill of injury to the complainant unless the desired relief be granted, and from the long delay of the third mortgagee in enforcing

payment of it.  It is assumed, then, that the satisfaction of
the first mortgage inured to the benefit of the third mortgagee
and was detrimental to the company.

The third mortagees are not responsible in any way for
the situation, and the rights which they had at the time the
situation arose will be protected.  It is equally evident, that
there are no other interests involved than those of the holder
of the second mortgage and the holder of the third mortgage.

If the complainants are entitled to have the first mortgage
reinstated as a lien, it will be given priority of lien over the
third mortgagees, because the third mortgage was made before the
satisfaction of the first mortgage, and while the first mortgage
was a valid and prior lien, and therefore the holders of the third
mortgage did not acquire their rights upon the credit of that
satisfaction.  The principle is thus stated in *Geib v. Reynolds*,
35 *Minn.* 331, 336, 28 *N. W.* 924:

"When a prior mortgage has been, by fraud or mistake, discharged
of record, a subsequent mortgagee, who became such anterior to such
discharge, cannot claim to be injured by setting aside the release, and
restoring the mortgagee to his rights."

So also the rights of the third mortgagees may be pro-
tected by this court in this cause.  If the first mortgage is
reinstated as a mortgage existing for the benefit of the Brewing
Company, this court can  speedily order a foreclosure of the
mortgaged premises by sale, all the parties to such a foreclosure
being parties to this cause.  The parties to this cause may
expedite the proceedings to a speedy conclusion; and the dili-
gence of the complainants in that direction may be secured by
the terms of the preliminary injunction to be awarded to pre-
vent the sale under the *levari facias* obtained by the third mort-
gagees, for that restraint could be removed for lack of such
diligence.  With a speedy sale of the mortgaged premises and
protection against loss in the interim, the rights of the third
mortgagees will not be unreasonably interfered with, and in
fact the only interference would be to delay the exercise by
him of his right to make sale under his execution immediately.

Therefore, with no rights of other persons intervening,

the way is open to consider by themselves the claims of the complainants to equitable relief. The only ground of equitable relief open to the complainants is that of mistake. As against the third mortgagees there is absolutely no other ground. What in fact were the mistakes of the Brewing Company, the holders of the second mortgage? (1) The officers of the company were unaware of its legal right to be subrogated to the rights of the first mortgagee; (2) they thought the third mortgage debt had been paid; and (3) it is claimed that they were mistaken as to the consequences of a satisfaction of the first mortgage and ignorant that such satisfaction would inure to the advantage of the third mortgagees. But this last mentioned ground is not to be regarded as entitled to any consideration in this court, for such ignorance on the part of men of large business affairs is not entitled to protection.

In making the mistake first alluded to, the company may seem to have made a mistake of law, and mistakes of law are not, generally speaking, a proper basis for equitable relief. There is, however, a modification of this general rule, and a more merciful rule is thus stated in 2 *Pomeroy on Equity Jurisprudence* (2d Ed.) *par.* 849, and is said by him to be just, based on principle and supported by a very great number of decisions:

"Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relation, either of property or contract or personal status, and enters into some transaction, the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact."

The granting of relief in equity for mistakes is discussed in *Marshall v. Rench*, 3 *Del. Ch.* 239, *Green v. Saulsbury*, 6 *Del. Ch.* 371, 33 *Atl.* 623, and in a case in the Orphans' Court, *In re Petition of McFarlin*, 9 *Del. Ch.* 430, 75 *Atl.* 281. It may be, then, that the overlooking by the complainants of the right to be subrogated to the rights of the first mortgagee, or to be treated as the equitable assignees of that mortgage, is to be

considered in this court as analogous to, if not identical with, a mistake of fact, and, therefore, entitles the second mortgagee to relief from the consequences of such a mistake.

But there is in this case a mistake which is clearly one of fact. It appears by proof adduced at the hearing of the rule that the officer of the company in charge of the matter knew of the third mortgage debt, and erroneously thought that the debt secured by the third mortgage had been paid as the result of the sale in 1906 of personal property of Chilinsky, the debtor, under the execution issued on the judgment entered on the bond accompanying the third mortgage. As a fact only about $500 was so realized, and at the time the first mortgage was satisfied of record, not only the third mortgage, but also the judgment for $1,500 entered on the bond accompanying that mortgage were unsatisfied. An examination of the record, or the making of some inquiry would have disclosed these facts. Under such circumstances, was the Brewing Company so careless as to forfeit the assistance of this court in relieving it of the consequences of such a mistake? A court of equity will relieve a lienholder from the legal consequences of a merger of estates; as for instance, where a lienholder purchases the legal title to the property on which he has a lien, and there is a subsequent lien. Merger is treated in equity, under some circumstances, as a question of intention, and if it operates detrimentally to the lienholder who acquires the legal title the lien will be preserved. This is not inequitable to the junior lienholder whose rights were, of course, acquired before the conveyance. While not applicable directly here, this equitable principle is analogous in effect to that which the complainant seeks to have applied here. It does not at this time seem clear that the officers of the company were so careless or negligent in protecting the rights and interests of the company as to forfeit the assistance of the court in obtaining relief from the consequences of their mistake as to the payment of the third mortgage. The discretion of the court in granting this kind of relief depends on the facts in each case, and in this case the question is a close one; but on the whole it seems but just to give such relief, when, as above shown, the

third mortgagees are not deprived of any right which they had at the time the mortgage was given, except the right to collect their debt by execution process, a right which they have not exercised during the past six or more years.

The entry of a satisfaction on the record of the first mortgage is not an obstacle to the relief. A mortgage which has been in fact canceled, released, discharged, or satisfied of record may be reinstated as a lien by a court of equity in order to grant relief, provided, of course, no superior equities exist. This was done in the following cases, and is entirely settled as a rule of law: *Bowen v. Gilbert*, 122 *Iowa* 448, 98 *N. W.* 273; *Hyde v. Tanner*, 1 *Barb.* (*N. Y.*) 75, 82; *Cobb v. Dyer*, 69 *Me.* 494; *Geib v. Reynolds*, 35 *Minn.* 331, 28 *N. W.* 923; *Gerdine v. Menage*, 41 *Minn.* 417, 43 *N. W.* 91; *Seeley v. Bacon*, (*N. J. Eq.*) 34 *Atl.* 139 (1896). Other courts have in cases somewhat like this been indulgent. In the case of *Seeley v. Bacon*, *supra*, the court said:

"Where, however, no one is injured by the mistake but the party himself, and no one has changed his position by reason of the act executed through the influence of an alleged mistake, I see no reason why the mistake should not be corrected, although the highest degree of vigilance has not been exercised."

Also in *Geib v. Reynolds*, 35 *Minn.* 331, 28 *N. W.* 923, the fact that a mortgage was discharged of record and a new mortgage taken in ignorance of the existence of an intervening lien was deemed such a mistake of fact as to entitle the mortgagee to relief, and this although the intervening lien was of record at the time. Indeed, a court of equity should be liberal in giving relief from the mistakes, not of law, but of fact, when no one is put in a worse position by reason of the mistake.

A preliminary injunction will, therefore, be awarded to the complainants enjoining further proceedings on the execution until the complainants have at least had an opportunity to obtain a decree establishing the first mortgage as a lien, and thereupon obtain an order for the sale of the mortgaged premises, from the proceeds of which sale the mortgage debt of the defendants will be paid by this court if the proceeds of sale be

sufficient.    In adjusting the rights of the parties to the proceeds of sale it will be possible to so adjust the equities between the parties as to costs and expenses of the cause as not to lessen the amount which would have been applicable to the third mortgagees in case the mistake of the complainants had not occurred.

It has seemed proper to state fully the reasons for deciding to grant the preliminary injunction, because the facts upon which they are based are not disputed, and an early statement of the views of the court as to such facts may be serviceable to the parties to the cause.