220

THE HOME LIFE INSURANCE COMPANY OF AMERICA, a corporation of the State of Delaware,

*vs.*

RACHEL A. MCCARNS.

*Kent, Nov.* 20, 1940.

*Ernest V. Keith,* for complainant.

*Bayard W. Allmond,* for defendant.

THE CHANCELLOR: This is a bill in equity to reform the provisions of an insurance policy issued by the complainant on the life of the defendant, and to restrain an action on such policy in its present form in a court of law; and the case is before this court on a demurrer to the complainant's bill.

On the 10th day of August, 1918, the defendant, Rachel A. McCarns, whose name was then Rachel A. Ellis, applied in writing to the complainant, The Home Life Insurance Company of America, for the issuance of a "twenty-payment life" insurance policy, for $1,000, on her life. The

policy was issued and dated September 4th, 1918, and by its provisions the complainant agreed to pay the said sum of $1,000 to Sarah Ellis, the mother of the insured, "upon receipt of due proofs of the fact and cause of the death of the insured during the continuance of this contract, and upon surrender of this policy." The policy further provided, however, that "the insured, if living on the 27th day of August, 1938, provided the premiums theretofore payable in each insurance year shall have been paid in cash, may select one of the following options:

"(1) Continue contract without further payment of premiums.
"(2) A cash payment of $878.00.
"(3) An annual income of $46.34."

Rachel A. McCarns, the insured, was living on the 27th day of August, 1938, and had paid all of the premiums due from time to time on the policy issued to her. On August 25th, 1938, she elected to demand payment of the cash surrender value of $878, provided for in the option clause of the policy, less the amount previously borrowed by her, with interest. Payment on that basis was, however, refused by the insurance company on the ground that that figure had been erroneously inserted in the policy through the negligence of one of its clerks in filling out the printed form, and that, based on the undisputed age of the insured, the amount that should have been inserted therein was $578.

A court of equity cannot change or reform an agreement which is actually made by the parties thereto; that would be making a new contract for them, which no court can do. *Colvocoresses v. W. S. Wasserman Co.*, 24 *Del. Ch.* 53, 4 *A.* 2d 800. Where, however, a written instrument is merely intended to record a prior, definite and specific oral understanding of the parties, but, because of a mutual mistake, that instrument fails to set out the prior agreement correctly in some material respect, a court of equity will ordinarily reform it. *Colvocoresses v. W. S. Wasserman Co.*, 24 *Del. Ch.* 53, 4 *A.* 2d 800; *McDaniel, et al., v. Franklin Ry.*

*Supply Co.,* 20 *Del. Ch.* 327, 174 *A.* 375. In other words, in order for a written instrument to be reformed in equity, it is essential that the parties thereto·shall have previously reached a complete mutual understanding with respect to all of the essential terms of their bargain, for otherwise there would be no standard by which the writing could be reformed. 5 *Williston on Contracts, (Rev. Ed.)* § 1548; *Restatement, Contracts,* § 504; *Colvocoresses v. W. S. Wasserman Co.,* 24 *Del. Ch.* 53, 4 *A.* 2d 800. Indeed, the very purpose of reformation is to make the alleged erroneous writing express correctly the real transaction between the parties. *Restatement, Contracts,* § 504; 23 *Harv. Law Rev.,* 623.

A mutual mistake is one common to both parties, where each labors under a misconception with respect to the same terms of the written instrument sought to be corrected. *Diman v. Providence, etc., R. Co.,* 5 *R. I.* 130; *Story's Eq. Jur.,* § 612; 23 *Harv. Law Rev.,* 611; 21 *C. J.* 87. A clear mistake by one party, coupled with ignorance thereof by the other party, does not, therefore, constitute a mutual mistake within this rule. 23 *Harv. Law Rev.,* 612. But the question is whether that principle applies to this case.

Where a mutual mistake is relied on, it must·clearly appear from the allegations of the complainant's bill that such a mistake was made. See *Colvocoresses v. W. S. Wasserman Co.,* 24 *Del. Ch.* 53, 4 *A.* 2d 800; *McDaniel, et al., v. Franklin R. Supply Co.,* 20 *Del. Ch.* 327, 174 *A.* 375; *Andrews v. Essex, etc., Ins. Co., (C. C.) Fed. Cas. No.* 374, 3 *Mason* 6; 6 *Couch Cyc. Ins. Law,* § 1391.

The bill in this case complies with that rule. It, among other things, alleges that on or about the 10th day of August, 1918, "the defendant applied for a policy of * * * insurance," for $1,000, on her life; that it was "then and there understood and agreed that the plaintiff should issue, if it accepted the said application, a twenty-payment life insurance policy"; that the complainant accepted the said appli-

cation, and thereupon issued "a policy of insurance" to the defendant for the said sum of $1,000; that "twenty-payment life policies were in the established form, approved by the Insurance Commissioner of the State of Delaware, containing *inter alia* uniform cash values at the end of the several years therein denominated," and that "by reason of the fact that the amount payable at the end of twenty years, as cash surrender value, would vary with the age of the assured, a blank was left in the policy for the insertion" of the correct amount. The application signed by the defendant prior to the issuance of the policy was, also, attached to the bill and shows that she applied for a "twenty-payment life" policy.

As I have already indicated, the mutual error complained of was the insertion in the policy of an amount to be payable to the insured, at her election, at the end of twenty years, which said sum exceeds the correct amount, according to the rules of the Insurance Company, by precisely $300.

The demurrer admits all of the well-pleaded allegations of the bill, and from the facts alleged it is apparent that Rachel A. Ellis, now Rachel A. McCarns, the defendant, never expressly bargained for, nor had the right to expect the issuance and delivery to her of, a twenty-payment life insurance policy for $1,000 that in any way differed from the usual form of policies of that nature issued by the complainant company. Her application was merely for a "twenty-payment life" policy, which, in the absence of some clearly expressed condition, could only mean a policy of the usual type issued by the company; and it is alleged that it was understood and agreed that if the application should be accepted such a policy would be issued. The surrender value of a policy of that nature, at the expiration of twenty years, is based on the mortality tables used by insurance companies. At the age of the insured when this policy was applied for and issued, its correct cash surrender value in August

of 1938 would have been $578; and, regardless of whether, prior to that time, she actually knew what that figure should be, that is precisely the kind of a policy she bargained for, and what the annual premiums paid for. There was, therefore, a mutual mistake, and the terms of the policy should be corrected by the insertion of $578 where $878 now appears. *Columbian Nat. Life v. Black*, (10 *Cir.*) 35 *F.* 2d 571, 71 *A. L. R.* 128; *Hemphill, et al., v. New York Life Ins. Co.*, 195 *Ky.* 783, 243 *S. W.* 1040; *New York Life Ins. v. Gilbert*, 215 *Mo. App.* 201, 256 *S. W.* 148; *Hibbard v. North American Life Ins. Co.*, 192 *Wis.* 315, 212 *N. W.* 779. If, by an error on the part of the insurance company, the amount inserted in the policy had been less than $578, it would hardly be contended that the error was not mutual, and that it could not be corrected on a bill filed by the insured.

It is true that it has been said in general terms on frequent occasions that a court of equity will not correct mistakes wholly caused by the complainant's own negligence. 2 *Pom. Eq. Jur.*, (4th *Ed.*) § 856; 21 *C. J.* 88; *Capehart v. Mhoon*, 5 *Jones' Eq.* 178, 58 *N. C.* 178; *Ross v. Singleton*, 1 *Del. Ch.* 149, 12 *Am. Dec.* 86; *New York Life Ins. Co. v. Kimball*, 93 *Vt.* 147, 106 *A.* 676. This statement is based on the theory that equity will only help those who help themselves. 23 *Harv. Law Rev.*, 623. That rule is frequently applied when culpable negligence appears, but no such broad and sweeping statement can be applied to all cases, particularly when no element of fraud or bad faith is alleged, and neither the defendant, nor any third person, is in any way prejudiced by the complainant's negligent act. *Institute Bldg. & Loan Ass'n. v. Edwards*, 81 *N. J. Eq.* 359, 86 *A.* 962; *McMullen v. Lockwood, et al.*, 4 *Del. Ch.* 568; *Stoeckle v. Rosenheim*, 10 *Del. Ch.* 195, 87 *A.* 1006; 21 *C. J.* 89. In fact, each case seems to depend largely on its own facts and circumstances. *Stoeckle v. Rosenheim*, 10 *Del. Ch.* 195, 87 *A.* 1006; *Institute Bldg. & Loan Ass'n. v. Edwards*, 81 *N. J. Eq.* 359, 86 *A.* 962; 4 *Pom. Eq. Jur.*, (4th *Ed.*) § 856; 21 *C. J.* 89, 90.

Applying these principles to this case, notwithstanding the complainant's negligence, no fact appears which affects its right to the relief asked for. See *New York Life Ins. Co. v. Gilbert,* 215 *Mo. App.* 201, 256 *S. W.* 148; see, also, 6 *Couch Cyc. Ins. Law,* § 1391.

The demurrer to the complainant's bill is, therefore, overruled.