116 Ill. App.3d 411 (1983)
452 N.E.2d 357
DAVID EARL HANES, Plaintiff and Counterdefendant-Appellee,
v.
ROOSEVELT NATIONAL LIFE INSURANCE COMPANY OF AMERICA, Defendant and Counterplaintiff-Appellant.
No. 82-572.
Illinois Appellate Court  Fifth District.
Opinion filed July 21, 1983.
*412 *413 Michael W. Atkins, of Springfield, for appellant.
Howard & Howard, of Mt. Vernon (G.W. Howard III, of counsel), for appellee.
Judgment reversed.
JUSTICE JONES delivered the opinion of the court:
Plaintiff, David Earl Hanes, brought this action to recover a monthly annuity benefit due him under an annuity policy written by the defendant, Roosevelt National Life Insurance Company of America (Roosevelt). The defendant filed a counterclaim to have the policy reformed because of a scrivener's error regarding the amount of the monthly benefit due the plaintiff. The trial court entered judgment for the plaintiff, ruling against the defendant on its counterclaim. The defendant contends on appeal that the trial court erred in failing to grant reformation where the evidence showed that the plaintiff intended to purchase a standard annuity policy but, through a clerical error in the defendant's home office, was issued a policy containing an erroneous annuity refund factor. We find, upon an examination of the record, that the defendant has set forth sufficient facts to justify reformation of the policy in question. We accordingly reverse the trial court's judgment denying reformation as being against the manifest weight of the evidence.
In December 1974 the plaintiff purchased an annuity policy from Roosevelt known as its "Spirit of '76 Annuity." This policy, comprised of three parts, included a retirement annuity, an endowment or investment benefit, and a decreasing term life insurance benefit. In the policy as issued, the annuity refund factor used to compute the *414 monthly income due the annuitant upon retirement was erroneously typed in as $40.79 per $1,000 of cash value at normal retirement age rather than as $5.75 as printed in the table of annuity options contained within the policy. The amount of $40.79 represented the total monthly income due the annuitant when computed with the refund factor of $5.75 per $1,000 of cash value. Upon maturity of the policy in December 1981, the plaintiff sued to enforce the policy as written, contending that he intended to purchase an annuity based on the $40.79 factor and that the mistake, if any, was a unilateral one on the part of the insurer, barring reformation of the policy.
The facts surrounding the execution of the policy are not substantially in dispute. Plaintiff Hanes testified at trial that he met with the defendant's agent, Kenneth Holland, on one occasion prior to issuance of the policy. At that time he and agent Holland discussed the amount of the life insurance coverage and the cash value of the endowment benefit upon maturity but did not specifically discuss the amount of the monthly annuity payment or the annuity factor used to compute this amount. The plaintiff stated that he did not know prior to delivery of the policy what his monthly annuity payments would be. He understood, however, that he had different settlement options available to him under the annuity and had asked questions concerning these options. By the terms of the policy, the monthly annuity payment would vary depending upon the option chosen.
Based on this information the plaintiff made and signed an application in which he designated the "installment refund annuity" as his settlement option. The policy was delivered to him along with a set of figures which showed the cash value of his annuity after seven years. The plaintiff testified that when he received his policy, he noted the $40.79 refund factor typed on the schedule page of the policy, mentally applied the policy formula, and realized that his benefit would be $270 to $280 per month. He did not refer to the table of annuity options containing the correct factor for his age and annuity option until directed to do so in correspondence with the company in December 1981.
Kenneth Holland, testifying for the defendant, confirmed that he did not specifically discuss the terms of the annuity options with the plaintiff prior to issuance of the policy except to point out to him that there were different options available under the annuity. Holland stated that the transaction in question was unusual in that the plaintiff paid for the policy, which was set up for annual or semi-annual premium payments, with a lump-sum "advance" payment of $11,082. The plaintiff made a down-payment on the policy when he submitted *415 his application and made a final payment six months after the policy took effect.
Roosevelt employee John Schaertl testified that the policy was otherwise a standard policy consisting of retirement annuity, endowment, and life insurance benefits. Under the annuity option specified by the plaintiff in his application, the retirement annuity benefit should have been figured with a refund factor of $5.75 for a total monthly benefit of $40.79. The error in the plaintiff's policy occurred when the front page of the policy was manually typed from the plaintiff's application after it had been approved by the defendant's underwriting department.
At the close of the evidence the trial court ruled for the plaintiff and against the defendant on the defendant's counterclaim for reformation. The court found that the defendant had failed to prove, as alleged in its counterclaim, the existence of an oral agreement regarding the amount of the monthly payment and a mutual mistake of fact in the policy as written.
On appeal the defendant contends that the evidence clearly showed the parties' mutual intent that the plaintiff receive the standard monthly benefit under the policy. This intent was manifested, it contends, by the plaintiff's submission of an application in which he selected the defendant's "installment refund annuity" as his annuity option and the defendant's acceptance of this application. Since both parties expected the policy to contain the actuarily correct annuity factor and since the policy as written did not reflect this intent, it is the defendant's contention that the trial court erred in failing to grant reformation as requested.
 1-3 The law is well settled that a court may reform an insurance policy where the contracting parties make a mistake and the policy fails to express the real agreement between them. (State Farm Mutual Automobile Insurance Co. v. Hanson (1972), 7 Ill. App.3d 678, 288 N.E.2d 523; Stoltz v. National Indemnity Co. (1952), 345 Ill. App. 495, 104 N.E.2d 320.) To reform an insurance policy on the ground of mutual mistake, the party seeking reformation must establish a mutual mistake of fact which was in existence at the time the policy was executed. He must prove, in essence, that both parties intended to say a certain thing but, because of a mutual factual mistake, said something different. (State Farm Mutual Automobile Insurance Co. v. Hanson.) This proof must be of a clear and convincing nature, and a mere preponderance of the evidence is insufficient to justify reformation. 31 Ill. L. & Prac. Reformation of Instruments sec. 17 (1957).
*416  4 In the instant suit for reformation, the defendant bore the burden of proving the parties' mutual intent regarding the amount of the monthly benefit due the plaintiff under the annuity. While the evidence showed that the parties did not specifically discuss this amount during negotiations for the policy, the plaintiff made and signed an application in which he requested one of the defendant's standard annuity options. Witnesses for the defendant testified that the defendant intended to issue a policy in accordance with the plaintiff's application but that the policy as written contained an error regarding the monthly annuity benefit. Thus, the availability of reformation in the instant case lies in inferring from the plaintiff's act of applying for the policy an intention to apply for the defendant's standard policy amount. (See Covington, Reformation of Contracts of Personal Insurance, 1964 U. Ill. L.F. 548, 552-53 (hereinafter Covington, Reformation of Contracts).) We believe, from a consideration of the record and relevant case law, that such an inference is justified in the instant case and that the defendant should have been granted reformation of the policy.
While we have found no Illinois cases in which this approach was expressly adopted, the case of Metropolitan Life Insurance Co. v. Henriksen (1955), 6 Ill. App.2d 127, 126 N.E.2d 736, provides support for our view that, in a case involving reformation of an insurance policy because of a scrivener's error, the insured's intent to obtain a standard policy can be inferred from his act of applying for the policy. In Henriksen the insured had applied for a standard plan of insurance designated in the insurer's rate book as L.P.R. or "Life with Premium Reduced." Under this plan the insured had the right to elect one of four mathematically equivalent options at the end of 20 years. In the policy as issued, however, a scrivener's error in the description of one of the options provided a benefit which was "manifestly incongruous" with the other options.
In holding that there had been a mutual mistake of fact justifying reformation of the policy, the court noted that "the written application executed by the [insured] was never disaffirmed by him" (6 Ill. App.2d 127, 134-35, 126 N.E.2d 736, 740.) The insurer's underwriter had approved this application for the plan of insurance designated in the rate book and had issued a policy thereon. The court stated:
"When [the insured] received the policy in response to his application, he either did or did not notice the error. If he did not notice it, the mistake was mutual. If he did notice it and said nothing, he was guilty of such inequitable conduct as to amount to fraud. [Citation]." 6 Ill. App.2d 127, 135, 126 N.E.2d 736, *417 740.
The Henriksen court, in reaching this result, relied upon the case of Columbian National Life Insurance Co. v. Black (10th Cir.1929), 35 F.2d 571. The trial court there had denied reformation of a policy containing an erroneously high cash value, finding that there was insufficient evidence of mistake on the part of the insured to justify reformation. The court on review reversed the trial court's decree and granted reformation, stating that, despite the insured's denial of any mistake on his part,
"his actions [spoke] louder than his words. He applied for an ordinary life policy; without any quibble, and in response to his application, he received a policy that manifestly was in error." (35 F.2d 571, 574.)
The court, finding that the insured's intent to purchase a standard policy was manifested by his application, held that the papers in the case "on their face [bore] conclusive proof of a mistake that [could] and should be corrected in equity." 35 F.2d 571, 574.
The approach of the Black and Henriksen courts has likewise been adopted by courts in other jurisdictions to grant reformation of insurance policies containing erroneously high cash values. (See Home Life Insurance Co. of America v. McCarns (1940), 25 Del. Ch. 220, 16 A.2d 587; Johnson v. Consolidated American Life Insurance Co. (Miss. 1971), 244 So.2d 400; Schmidt v. Prudential Insurance Co. (1940), 235 Wis. 503, 292 N.W. 447; Stamen v. Metropolitan Life Insurance Co. (1956), 41 N.J. Super. 135, 124 A.2d 328.) In Home Life Insurance Co. v. McCarns the insured had applied for and received a "twenty-payment" life insurance policy for $1,000. The policy when issued contained a cash surrender value that had been erroneously inserted in the policy by one of the insurer's clerks. The court stated the rule that in order for a written instrument to be reformed, the parties thereto must have reached a complete mutual understanding with respect to all the essential terms of their bargain. The court then declared:
"[The insured] never expressly bargained for, nor had the right to expect * * * a twenty-payment life insurance policy for $1,000 that in any way differed from the usual form of policies of that nature issued by the [insurer]. Her application was merely for a "twenty-payment life" policy, which, in the absence of some clearly expressed condition, could only mean a policy of the usual type issued by the company; * * *. * * * At the age of the insured when this policy was applied for and issued, its correct cash surrender value * * * would have been $578; *418 and, regardless of whether, prior to that time, she actually knew what that figure should be, that is precisely the kind of policy she bargained for, and what the annual premiums paid for." (Emphasis added.) 25 Del. Ch. 220, 225-26, 16 A.2d 587, 589-90.
 5 The plaintiff in the instant case argues that since the defendant's agent Holland did not specifically discuss the amount of the monthly annuity with him prior to issuance of the policy, there was no original agreement as to the terms of the annuity as required for reformation. As can be seen from the McCarns opinion, this argument misapprehends the nature and effect of the plaintiff's application for a standard policy. Here, as in McCarns, there was no evidence that the plaintiff bargained for anything other than the standard amount under the defendant's "installment refund annuity." The agreement between the parties, therefore, included the terms actually negotiated for and specified in the plaintiff's application plus those other terms normally included in the type of policy applied for. (See Covington, Reformation of Contracts, at 553; see also Johnson v. Consolidated American Insurance Co.: precise terms of policy were determined when the data shown on the application (face amount of policy, age of insured, amount of premium, and kind of policy) were applied to insurance company's schedules, tables and policy forms.) Thus, the instant policy can be reformed to reflect this agreement despite the plaintiff's assertion that he was not aware of the precise terms of the policy prior to its issuance.
 6-8 In a related argument the plaintiff contends that no contract was formed between the parties until he received the policy in question and accepted it by remitting his premium payment. He contends, therefore, that the policy as written contained the agreement of the parties and that he intended to purchase the amount of the annuity shown on the face of the policy. This argument, too, ignores the fact of the plaintiff's application for a standard policy and the company's issuance of a policy pursuant to that application. The plaintiff's application constituted an offer or proposal for a contract of insurance. (See 44 C.J.S. Insurance sec. 232(b) (1945); 22 Ill. L. & Prac. Insurance sec. 146 (1956).) When the defendant approved this application and issued its policy, it manifested its intention of accepting the application as made. There was, at that time, a meeting of the minds  an agreement to issue the policy applied for. (See Columbian National Life Insurance Co. v. Black; Johnson v. Consolidated American Life Insurance Co.; Schmidt v. Prudential Insurance Co.) Since the existence of the contract did not depend upon the plaintiff's receipt *419 or acceptance of the policy itself (see Columbian National Life Insurance Co. v. Black) the contract between the parties consisted of the standard terms of the annuity applied for and was not altered by the erroneous amount typed within the policy.
 9 The plaintiff contends that any mistake in drafting the instant policy was a unilateral mistake on the part of the insurer that would preclude reformation of the policy. It is an often stated requirement that to justify reformation the mistake must be mutual rather than unilateral. While some courts have held in analogous situations that a scrivener's error such as that here involved is a unilateral mistake barring reformation (Yablon v. Metropolitan Life Insurance Co. (1946), 200 Ga. 693, 38 S.E.2d 534; Woodmen of the World Life Insurance Society v. Arnold (1960), 194 Pa. Super. 256, 166 A.2d 290), this result stems from an erroneous emphasis upon the mistaken "act" of the insurer's draftsman in inserting the incorrect figure in the policy, whereas the issue is properly one of the mistaken belief of the parties regarding the correctness of the written instrument. (See Covington, Reformation of Contracts, at 549-50; 17 Couch, Insurance sec. 66:51, at 286 (2d ed. 1967); see also Travelers Insurance Co. v. Bailey (1964), 124 Vt. 114, 197 A.2d 813.) In the instant case our decision is premised, not on the defendant's error in entering the wrong annuity refund factor on the schedule page of the plaintiff's policy, but on the parties' mutual intent and belief that the policy as issued corresponded to that applied for by the plaintiff. Cf. Woodmen of the World Life Insurance Society v. Arnold: error was unilateral on part of insurer where nothing to show that insured participated in preparation of policy or insertion of figures on face of policy; Yablon v. Metropolitan Life Insurance Co.: no mutual mistake where insurer's typist bore full responsibility for error in policy.
Because of the view of mistake we have adopted herein, we decline to follow the reasoning of the court in Kaufman v. New York Life Insurance Co. (1934), 315 Pa. 34, 172 A. 306, which the plaintiff cites in support of his position. The court there reversed the trial court's decree granting reformation of a life insurance policy containing an erroneously high cash surrender value. Although the trial court had found that a mutual mistake existed because "`both parties * * * contracted with reference to the [insurer's] existing published rates, and both intended that the policy as issued and delivered should conform to such rates * * *'" (315 Pa. 34, 36, 172 A. 306, 306), the reviewing court held that the insured must have had a "particular" intent regarding the cash value of the policy at the time the contract was made. Since there was no indication that the insured knew what *420 his cash value was to be when he applied for the policy in question, the court refused to reform the policy to accord with the insurer's standard rates.
To the extent the Kaufman holding would require parties to an insurance contract to reach a specific agreement regarding each term of a policy before a binding contract is formed, we believe it is at variance with the more commonly held view regarding insurance contracts. The court in Schmidt v. Prudential Insurance Co. of America observed that,
"`[w]hile insurance in legal theory and in fact rests upon contract, in common practice it is dealt with more as if it were a commodity kept for sale. This attitude of mind * * * is due no doubt in large part to the standardization of insurance policies by legislative enactment and by long-continued practice. The customer specifies the amount and kind of insurance he wishes to purchase, [and] the representative of the insuring company undertakes to comply with the request. The terms of the contract are largely statutory. The details fall into certain categories. All parties to the transaction understand what is intended, and evidence relating to the transaction cannot therefore be tested by the rules that would apply to a negotiation respecting a fresh transaction, the details of which were to be worked out and agreed upon in the course of the negotiation and set forth in a writing between the parties.'" 235 Wis. 503, 515, 292 N.W. 447, 452.
Due to this standardized nature of insurance policies, the intent of an insured regarding the specific terms of a policy can be inferred from the fact of his application for a particular type of policy. (See Covington, Reformation of Contracts, at 553.) Surely the plaintiff in the instant case, in designating the type of settlement option he desired under the annuity applied for, expected the correct figures to be supplied in the policy as issued. He would not have intended the policy to vary from standard terms in a way detrimental to him, nor can he reasonably expect to be given advantages or benefits for which he has neither bargained nor paid. Thus, reformation of the instant policy will give the plaintiff a benefit which he could expect to receive under the annuity option chosen and one which is commensurate with the premium paid.
The facts of the instant case sufficiently establish the parties' prior agreement regarding the monthly benefit to be received under the annuity and a variance in the policy as written. We find, therefore, that the trial court erred in failing to grant reformation as requested *421 in the defendant's counterclaim, and we accordingly reverse the judgment of the circuit court of Jefferson County.
Reversed.
WELCH and KARNS, JJ., concur.