ESTATE OF STEPHEN W. BLAKELY, Plaintiff-Appellee, v. FEDERAL KEMPER LIFE ASSURANCE COMPANY, Defendant-Appellant.

Second District    No. 2—93—1047

Opinion filed September 26, 1994.

Sherri L. Giffin, Joseph J. Hasman, and Ernest W. Irons, all of Peterson & Ross, of Chicago, for appellant.

Timothy E. Cronin, of Timothy E. Cronin, P.C., of Bloomingdale, and David J. Winthers, of Mullen, Winthers & Galasso, P.C., of Winfield, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

On August 10, 1993, the circuit court of Du Page County denied the summary judgment motion of the defendant, Federal Kemper Life Assurance Company (Kemper), and granted the summary judgment motion of the independent executor of Stephen Blakely's estate. Kemper appeals; we affirm.

Mary Leach, a legatee and friend of Stephen Blakely, filed a petition for probate of the will and for letters testamentary for the last will and testament of Blakely. Leach was subsequently appointed independent executor for Blakely's estate. On September 6, 1991, Twyla Blakely filed a claim against the estate alleging, in part, that pursuant to a judgment for dissolution of marriage, Stephen Blakely was to maintain a life insurance policy in the amount of $182,000 but that Mr. Blakely had allowed that policy to lapse and no insurance existed.

The independent executor filed an answer to Twyla Blakely's claim, admitting that the judgment for dissolution of marriage provided that the decedent maintain a life insurance policy in the amount of $182,000 but denying that the decedent failed to do so.

The independent executor joined Kemper as a defendant and alleged that the decedent paid Kemper $179.82 more in first-year premiums than was required, that the policy did not provide for the manner of application of those excess payments, and that the executor, on behalf of the decedent, therefore elected to apply those surplus funds to a one-month premium payment. The independent executor also alleged that on January 8, 1991, Kemper served on the decedent a notice of premium due which did not meet the statutory requirements of the Illinois Insurance Code (215 ILCS 5/234 (West 1992)). Kemper contends otherwise and the case at bar stems from this dispute.

On October 8, 1989, the decedent applied for a life insurance policy with Kemper. Kemper subsequently issued a life insurance policy with an initial policy date of December 22, 1989, and a face amount of $180,000. The policy specified a first-year annual premium of $1,124.60, a first-year semiannual premium of $573.55, a first-year quarterly premium of $292.40, and a first-year monthly premium of $98.40. The policy issued to Blakely was an increasing term policy and premiums increased every year. The policy also listed the guaranteed maximum premiums on the policy for years 2 through 46 of the policy, indicating for each year an annual, semiannual, quarterly, and monthly amount. The guaranteed maximum second-year premium, if paid quarterly, was listed at $427.18, and, if paid monthly, was $143.76.

With his application for insurance, the decedent submitted a premium payment in the amount of $281.25 to Kemper, purporting to represent the first quarterly premium payment for the policy. This amount was insufficient to cover the first quarterly payment. Kemper then requested the decedent to submit an additional premium payment of $56.13, for a total first quarterly premium payment of $337.38. When Kemper received the subsequent premium payment for $56.13 on January 30, 1990, Blakely's policy date was changed to February 1, 1990. In April 1990, Kemper forwarded to Stephen Blakely a notice of premium due, advising Blakely that a quarterly premium for May 1, 1990, was due in the amount of $337.38. Kemper did so despite the fact that the policy it had issued unambiguously stated that the first-year quarterly payments were to be $292.40. Blakely paid the amount requested by Kemper, which was 14% more than that stated in his policy. In June 1990 and September 1990, Kemper again sent notices of premium due to Stephen Blakely, demanding payment in the amount of $337.38. Blakely paid these amounts shortly after receiving the notices. Thus, for 1990, Blakely paid $179.92 more in premiums than required under his written

policy. In January 1991, Kemper sent another notice of premium due to Blakely, advising him that the premium amount payable for the February 1, 1991, payment on his policy was $492.90. Blakely did not pay any amount to Kemper after the notice was sent in January 1991, and Blakely died between March 4, 1991, and March 13, 1991.

Kemper asserts that because of Blakely's failure to pay, his policy lapsed no later than March 4, 1991. The independent executor counters that the $179.92 which Blakely paid in excess of the premium amounts called for in his policy should be applied to monthly premium payments which would, in effect, extend Blakely's coverage under the policy beyond his date of death and, in any case, Kemper's January 1991 notice was defective.

While summary judgment is to be encouraged in the interest of prompt disposition of lawsuits (*Town of Avon v. Geary* (1991), 223 Ill. App. 3d 294, 299), it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party to judgment is clear and free from doubt (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358). The purpose of a summary judgment proceeding is to determine whether any genuine issues of material fact exist which should be tried (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240). Evidence is to be construed strictly against the movant and liberally in favor of the nonmovant (*Tersavich v. First National Bank & Trust* (1991), 143 Ill. 2d 74, 80-81). Only if the pleadings, depositions, and affidavits reveal no genuine issue of material fact is the moving party entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1992); *Graf v. St. Luke's Evangelical Lutheran Church* (1993), 253 Ill. App. 3d 588, 591.

## I. THE TRIAL COURT CORRECTLY DENIED FEDERAL KEMPER'S SUMMARY JUDGMENT MOTION.

Kemper asserts that it is entitled to summary judgment because: (1) Kemper does not accept partial premium payments and the overpayment was insufficient to keep the policy in force, (2) Kemper should be granted a reformation of the policy, or (3) the decedent waived his rights to contest the premium amounts under the policy. We disagree.

■ We find no merit in Kemper's contention that it does not accept partial premium payments and that the overpayment was insufficient to keep the policy in force. Kemper contends that because its motion for summary judgment was supported by the affidavit of Michael Proctor and the independent executor submitted no evidence to dispute that affidavit, the facts set forth in that affidavit, including the broad statement that Kemper accepts no overpayments, now

stand as admitted. Proctor stated that Kemper does not accept partial premium payments and, if it had received any overpayment from Stephen Blakely, Kemper would have immediately refunded that overpayment and not credited any partial payment to a premium due in the future. The appellate court has held that, "where a party moving for summary judgment files supporting affidavits containing well-pleaded facts and the party opposing the motion files no counteraffidavits, the material facts set forth in the movant's affidavits stand as admitted." (*Blankenship v. Dialist International Corp.* (1991), 209 Ill. App. 3d 920, 924.) This principle is inapplicable in the present case, however. According to Supreme Court Rule 191(a), a court must disregard conclusions in affidavits when adjudicating a summary judgment motion (134 Ill. 2d R. 191(a); *Clausen v. Ed Fanning Chevrolet, Inc.* (1972), 8 Ill. App. 3d 1053, 1056). We find Proctor's statements above to be self-serving conclusions contrary to the facts in the record of this case. It is uncontroverted that Kemper accepted payments from the decedent in amounts greater than those called for in his written life insurance policy and did *not* refund any portion of those payments.

■ Kemper's claim that no contrary evidence was presented by the independent executor is incorrect. In summary judgment proceedings, the law of Illinois is clear that answers to interrogatories may be treated as affidavits. (*Komater v. Kenton Court Associates* (1986), 151 Ill. App. 3d 632, 637.) In response to the allegation in Proctor's affidavit that Kemper requested of Blakely, and received from him, an additional first-year, first-quarter payment of $56.13, the independent executor obtained answers to interrogatories from Kemper. She incorporated those answers, plus copies of the first-year premium notices sent by Kemper to the decedent, into her answer and cross-motion for summary judgment. Thus, the doctrine of deeming the material facts admitted in an affidavit supporting a summary judgment motion does not apply.

■ Kemper has also argued that the amount of the decedent's overpayment is insufficient to keep the policy in force because the decedent opted to pay his premiums quarterly and his policy thus contained no provision for monthly payments. Blakely's policy, however, clearly sets forth the option to pay premiums monthly so long as payments are withdrawn directly from his bank account. Blakely is now deceased and therefore cannot pay from his bank account. We determine that it is equitable to allow the independent executor the choice to pay the premiums monthly.

■ Kemper also contends that it is entitled to a reformation of the policy to correct an alleged scrivener's error present therein. We

disagree. Kemper maintains that the reason the decedent's policy identified his first-year, quarterly payments to be $292.40 was because of a clerical input error which resulted in calculating Blakely's payments according to 1979 data instead of 1989 figures.

The record discloses that Kemper continued its mistaken ways by transmitting notices of premium due to the decedent with requests for payments 14% higher than that written on the decedent's policy. Indeed, Kemper admitted before the trial court that it did not know about its error until after Blakely had died and the claim against it had been filed.

We refuse to deem the error in question a scrivener's or clerical error which might then entitle Kemper to a reformation of the policy (*Metropolitan Life Insurance Co. v. Henriksen* (1955), 6 Ill. App. 2d 127). The court in *S.T.S. Transport Service, Inc. v. Volvo White Truck Corp.* (7th Cir. 1985), 766 F.2d 1089, interpreting Illinois law, sheds light on this issue. There, after conceding the difficulty in distinguishing clerical errors from other errors, the court stated, "[a] merely mathematical or clerical error occurs when some term is either one-tenth or ten times as large as it should be; when a term is added in the wrong column; when it is added rather than subtracted; when it is overlooked." (*S.T.S. Transport Service, Inc.*, 766 F.2d at 1093.) Thus, a missing decimal point is a scrivener's error (*Henriksen*, 6 Ill. App. 2d 127). So, too, was inserting a monthly payment amount in the place where a factor was to be inserted, resulting in a benefit approximately seven times greater than that contemplated by the parties (*Hanes v. Roosevelt National Life Insurance Co. of America* (1983), 116 Ill. App. 3d 411). However, using a correct set of numbers for an incorrect year to compute premiums when one should be using a different set of numbers, *i.e.*, insurance rates for the correct year, does not in our opinion constitute a scrivener's or clerical error. The error was not evidenced in the writing and cannot be proven now without parol evidence. Furthermore, it was continuous, ongoing, and repeated in Kemper's requesting amounts different from the amounts written in the policy.

We find the cases upon which Kemper relies actually dictate the opposite conclusion from the one Kemper seeks. Kemper erroneously argues the elements of rescission but seeks reformation in the present case (see, *e.g.*, *S.T.S. Transport Service, Inc.*, 766 F.2d 1089; *In re Marriage of Agustsson* (1992), 223 Ill. App. 3d 510; *Cummings v. Dusenbury* (1984), 129 Ill. App. 3d 338). While we admit similarities exist between the equitable doctrines of reformation and rescission, we note that the two doctrines have evolved separately and are distinguishable.

■ Even if we were to apply the principles of rescission to the facts in this case, rescission would be inappropriate. Recently, this court noted:

"[R]escission is a proper remedy for either a unilateral or mutual mistake of fact when the party seeking rescission shows by clear and convincing evidence that (1) the mistake is of a material nature; (2) the mistake is of such consequence that enforcement is unconscionable; (3) the mistake occurred notwithstanding the exercise of due care by the party seeking rescission; and (4) rescission can place the other party in status quo." (*In re Marriage of Agustsson* (1992), 223 Ill. App. 3d 510, 519.)

Assuming *arguendo*, the first three elements of the above test are met, Blakely cannot be placed in status quo here since he is now deceased. Refunding the overpayment to his estate now would not enable the decedent to obtain other life insurance and would leave him without coverage; practically speaking, Mr. Blakely is now uninsurable. Thus, the principles of rescission are inappropriate in this case.

■ The standards for granting reformation in this State are also clearly inapplicable. For a court to reform an instrument on the ground of mistake, " 'the mistake must be of fact and not of law, mutual and common to both parties, and in existence at the time of the execution of the instrument, showing that at such time the parties intended to say a certain thing and, by a mistake, expressed another.' " (*Zannini v. Reliance Insurance Co. of Illinois, Inc.* (1992), 147 Ill. 2d 437, 449, quoting *Wilcox v. Natural Gas Storage Co.* (1962), 24 Ill. 2d 509, 512.) The doctrine of reformation applies to insurance policies (*Zannini*, 147 Ill. 2d at 450), and the standard of proof for a party seeking reformation of an insurance policy is one of clear and convincing evidence, not a mere preponderance of the evidence. *Hanes*, 116 Ill. App. 3d at 415.

On two occasions Illinois courts have had the opportunity to rule on a scrivener's error leading to reformation of an insurance contract (*Henriksen*, 6 Ill. App. 2d 127; *Hanes*, 116 Ill. App. 3d 411). In *Henriksen*, the court affirmed the reformation of a policy to correct a missing decimal point, discovered while the insured was still alive, which resulted in one of an annuity's settlement options being 100 times or 10,000% greater than it should have been (*Henriksen*, 6 Ill. App. 2d 127). In making its decision, the court emphasized the large mathematical disparity between the erroneous settlement option and the other settlement options in the policy, finding the erroneous provision to be "manifestly incongruous" (*Henriksen*, 6 Ill. App. 2d at 134).

Similarly, the court in *Hanes* ordered reformation to correct an

incorrectly typed dollar figure in one of the insured's benefit options in an annuity contract where the mistake resulted in that option being roughly 7 times or 700% greater than it should have been (*Hanes*, 116 Ill. App. 3d 411). The correct, lower figure for that option was also found elsewhere within the policy (116 Ill. App. 3d at 414).

■ In the case at bar, the error in question is not manifestly incongruous. The first-year premium written in the policy was a mere 14% less than the amount demanded by Federal Kemper in the notices of premium due. There is no bright line test, but a premium amount varying only 14% from what it allegedly should have been is not manifestly incongruous.

Kemper contends that there is no useful social purpose to be served in enforcing the policy according to its written terms. We disagree. In explaining its reasoning for rescinding a mistaken term included in a contract due to a clerical error, the *S.T.S. Transport Services, Inc.* court stated, "No incentives exist to make such mistakes; all the existing incentives work, in fact, in the opposite direction." (*S.T.S. Transport Services, Inc.*, 766 F.2d at 1093.) In the case at bar, however, Kemper has every incentive to make such a mistake in the future. Were we to grant reformation in cases like this one, insurers would bear little risk for overcharging their clients. If the decedent's estate did not notice the overpayments, then the policy would be deemed lapsed and the insurer would keep the excess premiums; however, if the decedent's estate did notice the overpayments, then reformation, as requested by Kemper, would allow the insurer to "reform" the policy and be responsible for merely refunding the difference between the actual and erroneous premium amounts. Either way, the decedent does not receive coverage which he would otherwise be entitled to by statute (215 ILCS 5/240 (West 1992)). Furthermore, the decedent has reasonably relied upon the policy as written and cannot now be returned to his situation at the time of issuance of the policy. The appellate court has stated, "to establish an estoppel, an insured must show that he was in some manner misled by the acts or statements of the insurer or its agents, that the insured relied upon this conduct or representation, and that such reliance was reasonable" (*Ames v. Crown Life Insurance Co.* (1980), 85 Ill. App. 3d 203, 206). Here, Blakely was misled by Kemper's notices of premium due, which demanded first-year payments 14% higher than what was written in his policy, and reasonably relied upon the notices by paying them. Therefore, Kemper is now estopped from arguing for reformation of the written policy. Otherwise, the decedent will be prejudiced because his coverage would have lapsed and other coverage would be unavailable. In this

case, allowing reformation after the insured's death is akin to allowing the insurer to take money under false pretenses.

■ Kemper also claims that the decedent waived his right to contest the premium amounts set forth in the life insurance policy. We find this argument meritless. Under Illinois law, an insured has a duty to read his or her policy and inform the insurer of any discrepancy prior to filing a claim (*Floral Consultants, Ltd. v. Hanover Insurance Co.* (1984), 128 Ill. App. 3d 173). This legal tenet does not apply to an equitable proceeding for reformation, however (*Mahon v. State Farm Mutual Automobile Insurance Co.* (1962), 36 Ill. App. 2d 368, 379; see also *Stoltz v. National Indemnity Co.* (1952), 345 Ill. App. 495). Thus, Kemper's reliance upon *Floral Consultants, Ltd.* is misplaced.

■ Furthermore, the rule that an insured is bound to know his or her policy's contents does not apply where the insured has been " 'misled by some act of the insurer' " (*Britamco Underwriters, Inc. v. J.O.C. Enterprises, Inc.* (1993), 252 Ill. App. 3d 96, 102, quoting *Capps v. National Union Fire Insurance Co.* (1925), 318 Ill. 350, 353). It is uncontested that Kemper sent Blakely notices on three separate occasions requesting an amount greater than what Blakely's policy set forth as the amount due. We determine that the decedent was misled by Kemper's actions.

For the foregoing reasons, the trial court properly denied Kemper's summary judgment motion.

## II. THE TRIAL COURT PROPERLY GRANTED THE INDEPENDENT EXECUTOR'S SUMMARY JUDGMENT MOTION.

Kemper contends that the independent executor is not entitled to summary judgment. We affirm the trial court's decision to grant the independent executor's summary judgment motion.

■ We agree with Kemper that the trial court's logic in granting the independent executor's summary judgment motion was faulty. The trial court was faced with cross-motions for summary judgment. After argument, the court stated, "I suppose because that motion [of Kemper] was denied, it is [*sic*] required to grant the motion of the independent executor." This *non sequitur* was incorrect, for the mere filing of cross-motions does not compel the court to grant summary judgment in favor of one party or the other (see *Wahls v. Aetna Life Insurance Co.* (1983), 122 Ill. App. 3d 309, 313). However, a reviewing court is not bound by the trial court's reasoning and may rely upon any ground present in the record to sustain the trial court's decision (*Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 148).

We find sufficient grounds in the record to sustain the trial court's ruling in the present case.

We determine that there is no material issue of fact present here. The decedent paid $179.92 in excess premiums during the first year of his policy with Kemper. These overpayments extended the coverage period to a point in time where Blakely's policy would not have lapsed at the time of his death. Section 240 of the Illinois Insurance Code states, in part:

> "A life company may contract for or accept premium deposits, other than premiums stated in the policy. The unused application from such shall be held and accounted for as a premium deposit reserve, and in such case the policy or an endorsement thereon shall provide for the manner of application of the premium deposit reserve to the payment of premiums in default and for the disposition of such reserve if it is not sufficient to pay the next premium." (215 ILCS 5/240 (West 1992).)

While this statute does not mandate acceptance of excess premium payments, it does mandate provision for the disposition of such excess payments once the insurer has accepted them. In the present case, Kemper accepted excess premium payments from the decedent. Clearly, by not returning the $179.92 that the decedent paid in excess of his premiums as written in his policy, Kemper accepted those overpayments. The decedent's policy, however, contains no provision for the disposition of these overpayments, as the statute requires.

■ Where the mandated clause on disposition of overpayments is absent, we agree with the independent executor that she should be allowed to choose to apply the amount of the overpayments to further coverage, as provided in the statute (215 ILCS 5/240 (West 1992)). Because a monthly premium option was available to the decedent, application of the $179.92 to an extra month of coverage is acceptable and summary judgment in favor of the independent executor was properly granted.

We also agree with the independent executor's contention that summary judgment was properly granted because the required notice of premium due was defective. The January 1991 notice was defective in that it does not satisfy section 234 of the Illinois Insurance Code's requirements for notice sufficient to forfeit or lapse a life insurance policy within six months after default of payment (215 ILCS 5/234 (West 1992)). Under the statute, Kemper has the burden of proving that a written or printed notice had been prepared for the insured, that any such notice stated the amount of the premium due and where and to whom it was to be paid, that the notice had been duly addressed and mailed to Stephen Blakely, and that the notice warned

him of the consequences of failure to pay the premium. 215 ILCS 5/234 (West 1992); *Cullen v. North American Co. for Life & Health Insurance* (1988), 176 Ill. App. 3d 643, 646.

Illinois courts have consistently held that an insurer must strictly comply with the notice requirements of section 234 if it intends to declare a life insurance policy lapsed before the six-month statutory period expires. In *DC Electronics, Inc. v. Employers Modern Life Co.* (1980), 90 Ill. App. 3d 342, the court found that a notice which did not specifically state that the policy would be forfeited and void unless the premium was paid was defective. Also, in *Bellmer v. Charter Security Life Insurance Co.* (1986), 140 Ill. App. 3d 752, the court found that a notice was defective where it was properly sent to the insured but not to the named owner of the policy. The *Bellmer* court noted, "[i]nsurance forfeitures are disfavored as insurance serves important functions in contemporary society and, even in doubtful cases, courts should be quick to find facts which support coverage." *Bellmer*, 140 Ill. App. 3d at 755.

The January 1991 notice in the case at bar was defective as a matter of law. The record discloses that Kemper's January 1991 notice of premium due requested an incorrect premium amount— $492.90, when the decedent's written policy called for $427.18. Whether Kemper had a good-faith belief in the accuracy of the amount listed in the notice is irrelevant, for good faith is not a defense to section 234 (215 ILCS 5/234 (West 1992)). Moreover, Kemper failed to warn Blakely of the consequences of failure to pay the premium. Therefore, the notice was defective, and the six-month statutory grace period before the policy lapsed applied (215 ILCS 234 (West 1992)). Because Blakely died clearly within the six-month period, the trial court correctly granted summary judgment for the independent executor.

Accordingly, for the above reasons, the judgment of the circuit court of Du Page County, to deny the summary judgment motion of Federal Kemper and to grant the summary judgment motion of the independent executor, is affirmed.

Affirmed.

INGLIS, P.J., and COLWELL, J., concur.