Metropolitan Life Insurance Company, Appellee, v. Everett N. Henriksen and Anne C. Henriksen, Appellants.

**Gen. No. 46,484.**

First District, Third Division.

May 11, 1955.

Released for publication June 8, 1955.

George F. Doyle, of Chicago, for appellant; George F. Doyle, of Chicago, and William J. Gleason, of Harvard, of counsel.

Eckert, Peterson & Lowry, of Chicago, for appellee; Owen Rall, and Robert G. Schloerb, both of Chicago, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.

The defendants, who are the insured and named beneficiary in a life insurance policy issued by plaintiff,

appeal from a decree reforming the policy and perpetually enjoining them or anyone claiming through them from maintaining any action on the policy except for the amount of it as reformed.

There was evidence that: On February 29, 1932, the defendant Everett N. Henriksen, aged 12, applied to plaintiff by written application for an ordinary life insurance policy under a plan of insurance known as "Life with Premium Reduced" L. P. R. The pertinent provisions of the signed application read:

"No. 14. Amount of insurance desired $1000, ordinary premium payable annually.

"No. 15. Plan of insurance as designated in rate book L. P. R."

The letters "L. P. R." are an abbreviation for a plan of insurance called Life Premium Reduced after 20 years. Under this plan the annual premium was $16 for the first 20 years and, if the policy holder elected to continue the policy, the annual premium would be $10 thereafter until death. At the end of 20 years the insured, in lieu of continuing the policy, had a right to elect any one of the four plans of settlement:

"(1) To receive the total Cash Surrender Value of One Hundred Ninety Dollars; or

"(2) To receive a Paid-up Participating Life Policy for Five Hundred Forty Two Dollars; or

"(3) To receive an Annuity Contract providing for the yearly payment of Ten Dollars and Fifty One Cents during the lifetime of the Insured, the first payment of the annuity to be made one year from date of issue of the Annuity Contract; or

"(4) To receive in cash Sixty Three Dollars and to continue the Policy as a Whole Life Policy by the payment of Thirteen Dollars and Twenty Nine Cents, and a like amount annually thereafter during the lifetime of the Insured; the Policy to be endorsed to that effect by the Company."

March 4, 1932 the plaintiff issued the policy here in controversy. Through a clerical mistake the terms of settlement in number "(3)" of the policy read "To receive an Annuity Contract providing for the yearly payment of $1,051 during the lifetime of the Insured, the first payment of the annuity to be made one year from date of issue of the Annuity Contract." As a result of this clerical error, the defendant Everett N. Henriksen would appear to be entitled, upon maturity of the policy, to receive benefits amounting to 100 times those afforded him under the policy applied for.

After its issuance the policy in question was in the hands of the plaintiff on four different occasions for the purpose of making a change of beneficiary and noting a loan and repayment. On these occasions those clerks whose function it was to change the beneficiary and note loans and their repayment were not required to, and did not, examine the face of the policy to check the options of settlement. Plaintiff did not keep a copy of the policy here involved, nor does it retain any copies of policies issued by it. There was also evidence tending to prove that this is the general practice among insurance companies.

April 3, 1950 the plaintiff, through one of its agents, learned for the first time that the policy provided for an annuity contract of $1,051 annually for the lifetime of the insured. Immediately upon discovering the mistake the plaintiff tendered a corrected policy to the defendant Everett N. Henriksen, providing for an annuity contract of $10.51 a year, which was refused.

The basic issue presented is whether the reformation prayed for in the complaint is barred by the "incontestable" clause. The clause reads: "This policy shall be incontestable after it has been in force for a period of two years from the date of issue except for nonpayment of premiums and except as to the provisions and conditions relating to benefits in the event of total and permanent disability and those granting additional

131

insurance specifically against death by accident contained in any supplementary contract attached to, and made a part of, this policy." This precise question has never been determined by the courts of review in our State. In other jurisdictions, however, except in one case, the courts have uniformly held that an insurance company is not precluded by the "incontestable" clause from reforming the policy on the ground of mutual mistake. In Columbian Nat. Life Ins. Co. v. Black, 35 F.2d 571, it appears that by a printer's error the insured at the end of 20 years was given the option of $10,000 in cash instead of $3,040, which was the sum properly due under the terms of the insurance applied for. There the court, at page 577, said: "This is not a contest of the policy, but a prayer to make a written instrument speak the real agreement of the parties. It would hardly be suggested that an assured, who brings an action to reform a policy and to recover under it as reformed, is contesting the policy within the meaning of the clause."

In Buck v. Equitable Life Assur. Soc. of United States, 96 Wash. 683, 165 Pac. 878, the insurance company brought an action to correct a mistake in the cash surrender value of the policy as applied for to read $408 instead of $1,000 as written on the face of the policy. The court there said, at page 879: "The provision in the policy that it should be incontestable after one year as to the amount due avails naught to respondent. The appellant is not attempting to dispute the policy nor prevent a recovery thereon. It is simply contesting as to the amount due thereon. 'The amount due' in the language of this clause can mean no other sum than the amount due in law and fact. Appellant is seeking, not to avoid the payment of this amount, but to have the policy truthfully express the amount correctly due."

The rule announced in Columbian Nat. Life Ins. Co. v. Black has also been sustained in Equitable Life

132

Assur. Soc. of United States v. Cannon, 20 N.Y.S.2d 648; Neary v. General American Life Ins. Co., 140 Neb. 756, 1 N.W.2d 908; and Mates v. Penn Mut. Life Ins. Co., 316 Mass. 303, 55 N.E.2d 770.

In support of their position defendants rely on Richardson v. Travelers Ins. Co., 171 F.2d 699. An examination of this case discloses that in 1926 Richardson, a resident of California, applied for a life insurance policy for $10,000 on a so-called "Uniform Premium Plan." Through an alleged mistake of its officers and scriveners at its home office in Hartford, Connecticut, the insurer issued to Richardson a $10,000 policy known as a "Pension Policy, age 65." Under this policy the insured was entitled to twice the benefits afforded by the policy applied for and the premium paid throughout the life of the policy was somewhat over one-half of the premium normally required for its "Pension Policy, age 65." The policy was in the hands of the insurer for loan purposes on several occasions after its issuance and the error was not discovered, because the Loan Division had no connection with the Policy Division. In March 1946, the insurer first became aware of the alleged mistake. Upon Richardson's refusal to agree to a substitution, the insurer brought suit for reformation of the contract. Richardson denied the existence of the mistake, contending that the policy reflected the agreement of the parties. The court concluded that reforming the written instrument is in effect contesting the validity of the contract and is therefore precluded by the "incontestable" clause.

The rule announced in the Richardson case is contrary to that announced by the court in Columbian Nat. Life Ins. Co. v. Black, and the other cases cited. See 7 A.L.R.2d 504. The rationale of the rule in the Richardson case has also been criticized in articles in Law Reviews. 97 U. of Pa. L. Rev. 741; 62 Harv. L. Rev. 890; 1949 Ill. L. Forum 534; 33 Minn. L. Rev. 784;

and 24 Notre Dame Lawy. 535. In our opinion the rule announced in Columbian Nat. Life Ins. Co. v. Black and the other cases cited in accord therewith should be decisive of this issue.

Defendants insist that plaintiff failed to prove a mutual mistake. The evidence shows that when Henriksen's application was received by plaintiff its underwriter approved an application for the plan of insurance as designated in the rate book which was received in evidence; that the rate book in effect at the time gave figures for ages ranging from 15 to 50 years; that a rate card used for age 12, also received in evidence, shows that the annual premium for the policy here in question was $16; that the calculations of the options made by the actuary of the plaintiff as shown by the rate book and rate card for a "Life with Premium Reduced" policy at the end of the 20-year period are mathematically equivalent.

■ Plaintiff's witness James Burke, an officer of the company, testified that the plaintiff had never had plans of insurance known as "Life with Premium Reduced" which did not have mathematically equivalent options at the end of the 20-year period. As an illustration, under one option in the policy here in question, the insured, Henriksen, might surrender the policy at maturity and receive $190 in cash, and under another option he was to receive a paid-up participating life policy for $542. As we read the briefs, defendants tacitly admit that the third option, on which they base their claim, cannot be reconciled with the other options, for under that option the insured, Henriksen, after having paid premiums aggregating $320 would be entitled to an annual cash payment of $1,051 for the remainder of his lifetime, in addition to being insured against death for 20 years and sharing in the dividends. This is manifestly incongruous. It is uncontroverted that the written application executed by the defendant Everett N. Henriksen was never disaffirmed

by him. When he received the policy in response to his application, he either did or did not notice the error. If he did not notice it, the mistake was mutual. If he did notice it and said nothing, he was guilty of such inequitable conduct as to amount to fraud. See Columbian Nat. Life Ins. Co. v. Black, 35 F.2d 571.

This record leaves no doubt that one of the plaintiff's clerks, in copying the modes of settlement described on the rate card onto the policy brief, left out the decimal point in the third settlement, thus making it read $1,051 instead of $10.51.

■ The law seems well settled that a court of equity may reform an insurance policy where the contracting parties make a mistake and the policy fails to express the real contract between them. (Stoltz v. National Indemnity Co. of Omaha, Neb., 345 Ill. App. 495; Hibbard v. North American Life Ins. Co., 192 Wis. 315; Gray v. Supreme Lodge Knights of Honor, 118 Ind. 293; Buck v. Equitable Life Assur. Soc. of United States, 96 Wash. 683; Columbian Nat. Life Ins. Co. v. Black, 35 F.2d, 571.)

■ Defendants maintain that the plaintiff was guilty of laches. Under almost identical circumstances, this question has been decided contrary to defendants' contention in Columbian Nat. Life Ins. Co. v. Black, 35 F.2d 571. The rule announced in the case last cited was approved by this court in Anderson v. Pettigrew Foundry Co., 297 Ill. App. 14, and Blumenfeld v. Neuman, 350 Ill. App. 306.

■ Finally defendants contend that the decree is against the manifest weight of the evidence and is based on incompetent evidence. Defendants argue that plaintiff's Exhibit 7A, a rate book which was received in evidence, was prepared in the handwriting of some unknown person; that plaintiff made no showing that the person who made the entries was not available, and that this document was not admissible under the provisions of Section 3 of the Evidence Act [Ill. Rev.

135

Stats. 1953, ch. 51, § 3; Jones Ill. Stats. Ann. 107.069]. The record shows that Samuel Bateman, an actuary employed by the plaintiff, testified that he is familiar with the plan of insurance written by the company in 1932 known as "Life with Premium Reduced"; that he examined the records of the company showing the settlement options for that type of insurance; that plaintiff's Exhibit 7A shows the computations of options under that plan of insurance, and that the book (plaintiff's Exhibit 7A) he used as the source from which these values were placed in the policy, was obtained from the files of the company where he had seen it before and that it was one of the books used by the actuaries of the plaintiff. Obviously plaintiff's Exhibit 7A was the source of the amount of the options placed in all "Life with Premium Reduced" policies issued by plaintiff at the time the policy here involved was issued. It was therefore competent.

█ Defendants also objected to the admission of Exhibit 10A, the official rate book of the plaintiff. Plaintiff's witness Burke testified that plaintiff's Exhibit 10A was the rate book in effect in 1932. According to Burke's testimony this was the official rate book of the company used in the issuance of all policies and was filed with the State Department of Insurance. We think defendants' objection is without merit.

█ Defendants also objected to the admission of plaintiff's Exhibit 11A, the rate card used by the brief writers in preparing the policy brief for age 12, on the ground that no attempt was made to lay a foundation for its adoption as an original entry. Since plaintiff's witness Burke testified that this rate card was the type of card used in 1932 by the brief writers in preparing the policy in question and that he obtained the card from the files of plaintiff, we think the objection is untenable.

136

Objection was also made to the admission of plaintiff's Exhibit 12A. This exhibit was a "Life with Premium Reduced" policy issued to the sister of the insured Henriksen in February or March of 1932. It appears that the application for that policy was the same as that given by the insured Henriksen in his application. This policy, which is the same type as the one here in controversy, shows that option number 3 is for the sum of $14.54.

■ There is evidence tending to show that the insured Henriksen, in a conversation with one of plaintiff's agents, Lewis, indicated that the insured Everett N. Henriksen had knowledge of the mode of settlement in his sister's policy and that he knew that the third option in his own policy, of $1,051, was a mistake. This exhibit was admissible as tending to prove the insured's knowledge of the error. Likewise, plaintiff's Exhibit number 6, a letter written by Burke to the insured Henriksen, explaining the error in his policy, was also admissible.

From a careful examination of the record we think the evidence was ample to support the decree. The benefits allowed by the policy as reformed are commensurate with the premiums paid by the insured and he will receive what he bargained for.

For the reasons given, the decree is affirmed.

Decree affirmed.

KILEY, P. J. and FEINBERG, J., concur.