THIRD DIVISION

August 29, 2001

No. 1-01-0441

ALAN SCHAFFNER ) Appeal from the 

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

) 

v. ) 

)

) 

514 WEST GRANT PLACE CONDOMINIUM ) 

ASSOCIATION, INC., an Illinois ) 

not-for-profit corporation, ) 

WILLIAM WYLIE III, individually, ) 

and BRUCE GERSHENZON, individually,) Honorable 

) Bernetta D. Bush,

Defendants-Appellants. ) Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court:

Three into two don't go -- not when the three are the only unit owners in a condominium apartment building and the two are outside parking spaces that are part of the development but are not mentioned in the Declaration of Condominium Ownership.

The inevitable happened.  One owner, a latecomer to the building, sued the other two owners who had staked claims to the two spaces by voting to amend the Declaration.  Those two owners counterclaimed, seeking a reformation of the Declaration that would establish their rights to the spaces.

The plaintiff emerged victorious at the pleading stage in the trial court.  He won a judgment on the pleadings, thus eliminating the amendment, and he won a motion to dismiss the defendants' counterclaim for reformation.  We affirm the trial court's order granting judgment on the pleadings, but we reverse the order granting plaintiff's motion to dismiss the counterclaim for reformation and we remand for further proceedings.

FACTS

We take relevant facts from the pleadings.

514 West Grant Place Condominium Association, Inc. (the "Association"), is an Illinois not-for-profit corporation organized under the Illinois Condominium Property Act (the "Act") (765 ILCS 605/1 
et
 
seq
. (West 1998)).  The Association's purpose is to administer and operate the property known as Units 101, 102, and 103 of 514-516 West Grant Place, Chicago, Illinois (the "Property"), as defined by the Declaration of Condominium Ownership and of Easements, Covenants, Restrictions and Bylaws (the "Declaration").

In 1984, Corrales & Associates Limited Partnership (the "Developer") converted 514-516 West Grant Place, Chicago, Illinois, to a three-unit condominium.  At about the same time, 514 West Grant Place Condominium Association was formed.

In 1984, Lisa Ross purchased Unit 101 from the Developer.  She lived in Unit 101 until 1995.  In 1995, defendant Bruce Gershenzon (Gershenzon) bought Unit 101 from Lisa Ross.  

Defendant William Wylie III (Wylie) purchased Unit 102 in 1984 from the Developer.  Wylie has been Unit 102's only owner/occupant.

William Mallers, Sr., a principal of the Developer, purchased Unit 103 and lived there from 1984 to about 1993.  His son, William Mallers, Jr., bought and/or lived in Unit 103 from 1993 to about 1995.  In 1995, Jeff Drulac bought Unit 103 and lived there until 1998.  In 1998, plaintiff Alan Schaffner (Schaffner) bought Unit 103 from Jeff Drulac.
(footnote: 1)
 Wylie and Gershenzon have been Board Members of the Association since they became unit owners.  Schaffner has not been a Board Member.

The Property has five parking spaces.  Three are enclosed and two are outside.  This case centers on the two outdoor parking spaces, which are on the east side of the Property.   The Declaration defines the condominium and ownership of the condominium in terms of a Plat which is attached to and is a part of the Declaration.  In their amended counterclaim, defendants allege the Developer attached the wrong maps/surveys to the Declaration as the Plat.  The Plat did not accurately reflect the premises -- it did not depict any outdoor parking spaces.  In fact, nowhere in the pre-amendment Declaration was there any mention of the outdoor parking spaces.

The Plat shows a wooden deck in the area where the outdoor parking spaces are.  Although a wooden deck has been in existence on the Property since 1984, it is in a different shape and located in a different area than shown on the Plat.  

Defendants contend the Plat attached to the Declaration is incorrect in two ways: (1) it does not correctly portray the shape or location of the wooden deck, and (2) it does not portray the outdoor parking spaces.

They allege the Developer and original purchasers of Unit 101 and 102 agreed the outdoor parking spaces would be limited common elements.  In other words, only the owners of Unit 101 and Unit 102 would have the exclusive right to use the outdoor parking spaces -- a parking space apiece.  Defendants went on to allege "the Developer and the original purchaser of Unit 103 agreed, ***, that Unit 103 would enjoy 
no
 use of the Property's outdoor parking spaces."  (Emphasis in original).

Defendants also allege the Developer and each of the successive owners of Unit 101, 102, and 103, except for Jeff Draluc, "have at all times believed and understood that the Declaration granted exclusive use of the outdoor parking spaces to Units 101 and 102."

With respect to Jeff Draluc, defendants allege "in the last two months of Mr. Draluc's ownership of Unit 103, he became aware of the drafting errors in the Declaration."  Defendants say that although Draluc acted consistently with the "agreement and understanding" that the outdoor parking spaces had been granted to Units 101 and 102 for their exclusive use, he would occasionally try to park in one of the outdoor parking spaces.

Defendants also allege Draluc told Schaffner that although Unit 103 did not have a right to use the outdoor parking spaces, he recently discovered drafting errors in the Declaration.  Defendants contend Schaffner purchased Unit 103 from Draluc with "full knowledge that there were mistakes in the Declaration."  And, "With such knowledge of the mistakes, since closing on his purchase of Unit 103, Mr. Schaffner has repeatedly used the Property's outdoor parking spaces and threatened to continue doing so absent intervention."

Schaffner's actions prompted the Association to convene a meeting.  On or about July 8, 1999, the defendants, in their role as Board Members of the Association, served themselves and Schaffner with notice of special meeting to amend the Declaration "to correct an omission and error relating to the use of the two outdoor parking spaces."  The special meeting was held on July 15, 1999.

At the meeting, defendants voted to amend the Declaration to provide that the two outdoor parking spaces would be reserved for their exclusive use as "limited common elements of Unit 101 and Unit 102".  Naturally, Schaffner voted against the proposed amendment, but to no avail.  

On December 20, 1999, defendants amended the Declaration (the "Amendment").  On January 3, 2000, defendants recorded the Amendment. 

On February 23, 2000, Schaffner filed his two-count complaint seeking a declaratory judgment that the amendment to the Declaration was invalid and damages for breach of fiduciary duties (stayed pending this appeal).  

In count I of his complaint, Schaffner alleges executing and recording the Amendment (1) "diminished the Common Elements of the Property thereby reducing the value of Schaffner's ownership interest in the Common Elements of the Property", (2) "unreasonably interfere with Schaffner's use of the Common Elements of the Property", and (3) "violate the provisions of the [Act]."  

On March 27, 2000, defendants filed their answer, with affirmative defenses that included waiver and estoppel.  They also filed a verified counterclaim seeking: reformation of the Declaration and related condominium documents, a declaratory judgment the amendment to the Declaration was valid, and injunctive relief.  

Schaffner moved for judgment on the pleadings on his claim for declaratory judgment.  Schaffner also filed a section 2-615 motion to dismiss defendants' affirmative defenses and verified counterclaim.  See 735 ILCS 5/2-615 (West 1998).  

On June 14, 2000, the trial court granted both motions.  The court ordered "The Amendment recorded on 1-3-2000 *** is hereby declared invalid and of no force and effect."  The court allowed defendants leave to amend.

On July 12, 2000, defendants filed their amended affirmative defenses and amended verified counterclaim for reformation, declaratory judgment, and injunctive relief.  The trial court dismissed defendants' pleadings on September 13, 2000.  

Schaffner's damages claims alleging breach of fiduciary duty (count II) are pending.  As far as we can tell, the trial court's judgment on the pleadings did not specifically declare a winner in the parking space dispute.  

On January 22, 2000, the court ordered "there is no just reason to delay enforcement or appeal of the June 14, 2000 Order and the September 13, 2000 Order pursuant to Supreme Court Rule 304(a)".  See 155 Ill. 2d R. 304(a). 

This appeal followed.

DECISION

JUDGMENT ON THE PLEADINGS

Defendants contend the trial court's grant of Schaffner's motion for judgment on the pleadings was improper. 

In deciding a section 2-615 motion for judgment on the pleadings (735 ILCS 5/2-615(e) (West 1998)), the trial court must examine all pleadings on file, taking as true the well-pleaded facts set forth in the opposing party's pleadings and the reasonable inferences to be drawn therefrom, and determine whether a material factual dispute exists or whether the controversy can be resolved strictly as a matter of law.  
XLP Corporation v. The County of Lake
, 317 Ill. App. 3d 881, 884-85, 743 N.E.2d 162 (2000).  

We review 
de
 
novo
 a trial court's grant of a motion for judgment on the pleadings.  
People ex rel. Shapo v. Agora Syndicate, Inc.
, No. 1--00-4119, slip op. at 9 (June 22, 2001).  We must determine whether any genuine issue of material fact exists and, if not, whether the prevailing party was entitled to judgment as a matter of law.  
People ex rel. Shapo
, No. 1--00-4119, slip op. at 9.

Here, the trial court declared, as a matter of law, the Amendment executed and recorded by defendants invalid and of no force and effect.  We agree.  

The Declaration defines Common Elements as "All portions of the Property excluding the Units, unless otherwise specified."  Common Elements include "All halls, corridors and pavements" and "All other parts of the property necessary or convenient to its existence, maintenance, and safety, or which are normally in common use."

A Limited Common Element is defined as "A portion of the Common Elements so designated and reserved in the Declaration, whose use has been restricted for the use of one Unit Owner, including but not limited to the Building Limited Common Elements, as described in Article Three, Section Two of this Declaration."

Article Three, Section Two of the Declaration states Limited Common Elements include "Building Limited Common Elements" and "Parking Stalls and Garage Doors".  Building Limited Common Elements are portions "of the Common Elements serving exclusively a single building as an inseparable appurtenance thereto, ***."  Parking stalls "means that area provided for the enclosed parking of automobiles as shown or referenced to on the Plat."

Both Schaffner and defendants agree the Declaration and the Plat attached to it do not describe or refer to the two outdoor parking spaces.  That is, they are not "otherwise specified," a fact which leads to the logical conclusion that the outdoor parking spaces should be considered Common Elements under the original Declaration.

Article Three, Section Three (entitled "
Ownership
 
of
 
Common
 
Elements
") states, in part:

" Each Owner of a Unit shall own in fee absolute a proportionate, undivided interest in the aforesaid Common Elements noted hereunder equal to the proportion that the value of such Unit bears to the total value of all Units, as a tenant in common with all other Unit Owners of the Property ***."

To amend the Declaration, Article Four, Section Fourteen of the Declaration (entitled "
Amendment
 
of
 
Declaration
") provides, in part: 

" This Declaration may be amended or supplemented by the affirmative vote of those Unit Owners entitled to exercise one hundred per cent (100%) of the total voting power of the Association, cast in person or by proxy at a meeting duly called and held ***."

On January 3, 2000, defendants recorded the Amendment, which states in pertinent part:

" WHEREAS, the Association desires to amend the Declaration pursuant to Section 27 of the Act to (i) correct the omissions and errors relating to the two (2) outdoor stalls, (ii) correct the Plat in order to accurately reflect the two (2) outdoor stalls, and (iii) confirm the assignment by the Developer of the two outdoor stalls as Limited Common Elements for the benefit of Unit 101 and Unit 102, respectively."

The defendants contend they needed only a two-thirds vote to secure ownership of the outdoor parking spaces, not the 100% required by the Declaration.  They say section 27(b)(2) of the Act (765 ILCS 605/27(b)(2) (West 1998)) dictates the appropriate procedure for amending the Declaration because "the Condominium Declaration does not contain a provision for correcting omissions and errors, but rather contains a general provision for amending the Condominium Declaration."  That section states, in pertinent part:

   (2) 
If through a scrivener's error, *** all the common expenses or all of the common elements in the condominium have not been distributed in the declaration
, so that the sum total of the shares of common elements which have been distributed or the sum total of the shares of the common expenses fail to equal 100%, *** , 
the error may be corrected by operation of law by filing an amendment to the declaration approved by vote of two-thirds of the members of the Board of Managers or a majority vote of the unit owners at a meeting called for this purpose
 which proportionately adjusts all percentage interests so that the total is equal to 100% unless the condominium instruments specifically provide for a different procedure or different percentage vote by the owners of the units and the owners of mortgages thereon affected by modification being made in the undivided interest in the common elements, the number of votes in the unit owners association or the liability for common expenses appertaining to the unit.  (Emphasis added.)  765 ILCS 605/27(b)(2) (West 1998).

According to defendants, "through a scrivener's error," the Plat mistakenly depicted a wooden deck (which currently exists in a different shape and different area than depicted in the Plat) in the area where the outdoor parking spaces are located.  Defendants contend this "error" led to the "omission" of describing and delineating the outdoor parking spaces in the Declaration as Limited Common Elements for the exclusive use of defendants.  "The omission in the Declaration is an obvious mistake, which must be corrected to reflect the way the property truly is configured", say defendants. 

There can be no reduced majority vote under section 27(b)(2) without a finding of "scrivener’s error," an archaic phrase that somehow has survived time and legislative amendment.  If this omission of outdoor parking spaces was not a scrivener’s error there is no need to explore the question of whether the defendants’ vote "materially or adversely affected" Schaffner’s property rights, a fact that would trump the two-thirds vote authority of section 27(b)(2).  See 765 ILCS 605/27(b)(4) (West 1998).

We cannot give the statute a construction that would render the phrase superfluous or meaningless; we must give it some reasonable meaning.  
Huskey v. Board of Managers of Condos of Edelweiss
, 297 Ill. App. 3d 292, 295, 696 N.E.2d 753 (1998).  

No Illinois case defines the term, but several have applied it.  In each instance, the correction was mechanical or technical in nature, not decisional or judgmental.  See 
People v. Wyzgowski
, No. 3-00-0766, slip op. at 3-5, (July 13, 2001) (Court found "scrivener's error" in an officer's sworn report "merely a formal defect" where the report incorrectly stated the date of arrest as July 7, 2000, as opposed to July 6, 2000); 
People v. Mast
, 305 Ill. App. 3d 727, 734, 713 N.E.2d 242 (1999) (Court rejected State's argument that defense counsel's failure to mention his review of guilty plea proceedings in his Rule 604(d) certificate constituted "scrivener's error" stating, "referring to the omission in question as a scrivener's error is a 'gross mischaracterization' ***, the defect in the certificate did not constitute a 'typographical error or careless omission of a dispensable term.' "); 
Krilich v. Plencer
, 305 Ill. App. 3d 709, 712-13, 713 N.E.2d 213 (1999) ( "
Nunc
 
pro
 
tunc
 orders may be entered to correct clerical errors [or inadvertent scrivener's error], but such an order cannot be used to correct judicial errors. [Citation.] 'The distinction between a clerical error and a judicial one does not depend upon the source of the error, but rather, upon whether it was the deliberate result of judicial reasoning and determination.' [Citation.]"); 
In re
 Application of the County Collector
, 295 Ill. App. 3d 703, 709-10, 692 N.E.2d 1211 (1998) (Court found that omission of a prefix to a certificate number on a statutory notice form was not "a mere typographical or scrivener's error" where the evidence suggested the omission of the certificate number prefixes on notice forms were by design and believed to be irrelevant.); 
Blakely v. Federal Kemper Life Assurance Co.
, 267 Ill. App. 3d 100, 106-07, 640 N.E.2d 961 (1994) (After conceding the difficulty in distinguishing clerical errors from other errors, the court looked to a seventh circuit case, 
S.T.S. Transport Service, Inc. v. Volvo White Truck Corp.
, 766 F.2d 1089 (7th Cir. 1985), which stated, " '[a] merely mathematical or clerical error occurs when some term is either one-tenth or ten times as large as it should be; when a term is added in the wrong column; when it is added rather than subtracted; when it is overlooked.'  ([Citation.])"  By that definition, the court held "a missing decimal point is a scrivener's error ([citation]).  So, too, was inserting a monthly payment amount in the place where a factor was to be inserted, *** ([citation]).  However, using a correct set of numbers for an incorrect year to compute [insurance] premiums when one should be using a different set of numbers, i.e., insurance rates for the correct year, does not in our opinion constitute a scrivener's or clerical error.  The error was not evidenced in the writing and cannot be proven now without parol evidence.  Furthermore, it was continuous, ongoing, and repeated ***."); 
People v. Reznick
, 141 Ill. App. 3d 593, 597, 491 N.E.2d 444 (1986) (A trial court's written order stating defendant's sentence was to be concurrent was not "a mere scrivener's error" where the trial judge did not state at the sentencing hearing that the sentences were to be served consecutively to the previously imposed sentence.); 
Dauderman v. Dauderman
, 130 Ill. App. 2d 807, 808-09, 263 N.E.2d 708 (1970) (Trial court amended the parties' divorce decree to read "$400.00 per month" rather than "$400.00."  Appellate court held the failure to include the words "per month" was clearly an "inadvertent clerical error" or "scrivener's error" because the lump sum award did not match the decree absent the language "per month."); 
People ex rel. Cameron v. New
, 214 Ill. 287, 290-91 (1905) (Although a legal description in a petition for the organization of a village -- where the property must be contiguous -- had been defective in that it referred to "the north three-fourths" instead of the "south three-fourths," a plat attached to the petition was used for the purpose of correcting the "scrivener's error" and giving effect to the intention of the petition.); 
Garrick v. Chamberlain
, 97 Ill. 620, 638 (1881) (A notice was considered valid when it described property as "lot 5, lot 23, in Carpenter's addition" instead of "lot 5, in Block 23, in Carpenter's addition" because the mistake was a typographical or a scrivener's error readily apparent on the face of a notice.).

Lacking a clear definition of "scrivener's error," we look elsewhere.

A "scrivener" is "A writer; esp., a professional drafter of contracts or other documents."  Black's Law Dictionary 1349 (7th ed. 1999).  A "scrivener's error" is defined as a "clerical error":

"
clerical error.
  
An error resulting from a minor mistake or inadvertence
, esp. in writing or copying something on the record, and not from judicial reasoning or determination.  

● Among the boundless examples of clerical errors are omitting an appendix from a document; typing an incorrect number; mistranscribing a word; and failing to log a call." (Emphasis added.)  Black's Law Dictionary 563 (7th ed. 1999).

Whatever the reason for omitting the outdoor parking spaces from the Declaration, we cannot see how it was caused by a scrivener’s error, as that term is used in section 27(b)(2).  Somebody made a decision to do it.  It was a deliberate judgment.  There was nothing technical about it.  Omission of the only two outdoor parking spaces in the Development cannot be considered a "minor mistake or inadvertence."

We find support for our conclusion in the Historical & Practice notes to section 27(b):

"subsection 27(b) *** provides a summary procedure to correct omissions or errors in condominium instruments.  Omissions or errors include provisions which conflict with current case and statutory law, typographical or similar types of mistakes, and provisions in a declaration or by-laws which mutually conflict with each other."  765 ILCS Ann. 605/27(b), Historical & Practice Notes, at 174 (Smith-Hurd 1993). 

That leaves us with the Grant Place Declaration.  See 
Carney v. Donley et al.
, 261 Ill. App. 3d 1002, 1008, 633 N.E.2d 1015 (1994).  

It is true there is a clear intent that the Board Members have broad authority to manage and administer the property, including the Common Elements and Limited Common Elements.  See 765 ILCS 605/18-4 (West 1998). 

But the amendment voted here diminishes the common elements by granting the defendants exclusive use of some part of the common elements, i.e., the two outdoor parking spaces.  For this, a unanimous vote of the unit owners is required by Article Four, Section Fourteen of the Declaration.  See 
Carney
, 261 Ill. App. 3d at 1008-10 ("plaintiff's ownership interests were diminished because *** plaintiff was precluded from using a portion of the common elements to which he previously had access."); 
Stuewe v. Lauletta
, 93 Ill. App. 3d 1029, 1031, 418 N.E.2d 138 (1981) ("the specific language of the Declaration requires approval of all owners before the common elements could be diminished."); 
Schaumburg State Bank v. Bank of Wheaton
, 197 Ill. App. 3d 713, 721, 555 N.E.2d 48 (1990) ("an individual unit owner's undivided interest would only be diminished if the use or easement was exclusive and, as a result, the unit owner was precluded from using a portion of the common elements to which he previously had access."); 
Sawko v. Dominion Plaza One Condominium Ass'n
, 218 Ill. App. 3d 521, 529-30, 578 N.E.2d 621 (1991) (the court relied on 
Stuewe
 and 
Schaumburg State Bank
 to conclude the exclusive use portions of common elements which were formerly designated as nonexclusive use portions diminished plaintiff's interests in the common elements).  

Defendants' self-grant of the two outdoor parking spaces diminished Schaffner's ownership interests in the affected common elements.  Contrary to Article Four, Section Fourteen of the Declaration, Schaffner's ownership interests were changed without the required unanimous approval of all unit owners.  

We agree with the trial judge that the amendment to the Declaration executed and recorded by defendants is invalid and of no force and effect. 

We also find the trial court properly granted Schaffner’s section 2-615 motion to dismiss that part of defendants’ verified amended counterclaim seeking a declaratory judgment that their amendment to the Declaration was valid (count II). 

MOTION TO DISMISS

A section 2-615 motion attacks the sufficiency of the counterclaim and raises the question of whether it states a cause of action upon which relief can be granted.  See 
Schal Bovis,Inc. v. Casualty Ins. Co.
, 314 Ill. App. 3d 562, 571, 732 N.E.2d 1082 (1999).  735 ILCS 5/2-615 (West 1998).  

We review 
de
 
novo
 the trial court’s dismissal of count I of defendants’ counterclaim and their affirmative defenses, accepting all well-pled facts in the counterclaim as true and draw all reasonable inferences from those facts in favor of the counterplaintiff.  See 
Schal Bovis,Inc.
, 314 Ill. App. 3d at 571.

REFORMATION

Defendants contend the trial court erred in dismissing their counterclaim for reformation of the condominium declaration to include the two outdoor parking spaces.  In response, Schaffner says, "There is certainly no legal basis to reform the deeds and Declaration at this late date" where the defendants failed to sufficiently plead factual allegations necessary for a claim of reformation based on mutual mistake.  We disagree.

The action for reformation is to change the written instrument by inserting the omitted provision so that the instrument conforms to the original agreement between the parties.  
Briarcliffe Lakeside Townhouse Owners Ass'n v. City of Wheaton
, 170 Ill. App. 3d 244, 251, 524 N.E.2d 230 (1988).  "What is sought to be reformed 
is not the understanding between the parties,
 but rather the 
written instrument
 which inaccurately reflects it."  (Emphasis in original.)  
Briarcliffe
, 170 Ill. App. 3d at 251.

At this stage, we are concerned only with the sufficiency of the factual allegations, not matters of proof.  To state a cause of action for reformation, the complaining party must allege (1) the existence and substance of an agreement between the parties and the identity of the parties to that agreement;  (2) that the parties agreed to reduce their agreement to writing;  (3) the substance of the written agreement;  (4) that a variance exists between the parties' original agreement and the writing;  and (5) the basis for reformation (e.g., mutual mistake).  
Briarcliffe
, 170 Ill. App. 3d at 252 (citations therein).  

Defendants do not have to allege in express terms the written instrument, i.e., the Declaration, was erroneously executed through mutual mistake, as long as their pleading sets out specific facts from which "such a conclusion is inevitable or fairly deducible."  See 
Briarcliffe
, 170 Ill. App. 3d at 252, quoting 
Darst v. Lang
, 367 Ill. 119, 125, 10 N.E.2d 659 (1937).   Here, we find the defendants’ counterclaim sufficient to state a cause of action for reformation.  See 
Ballard v. Granby
, 90 Ill. App. 3d 13, 15-16, 412 N.E.2d 1067 (1980).

In reviewing count I of defendants’ amended verified counterclaim, we find allegations (1) the Developer and original purchasers of Unit 101, 102, and 103 agreed the owners of Unit 101 and 102 would have the exclusive right to use the two outdoor parking spaces and the owner of Unit 103 would enjoy no use of the outdoor parking spaces -- the parties to the agreement are identifiable; (2) the Developer and the Unit Owners agreed to reduce their agreement to writing; (3) defendants set forth the terms of the Declaration and said the Declaration did not reflect the true intention of the parties; (4) a variance existed between the Declaration and the original agreement between the Developer and the Unit owners, as evidenced by the omission of the outdoor parking spaces in the Declaration; and (5) the wrong maps/surveys were attached to the Declaration by mistake. 

Whether the evidence of mutual mistake is sufficient is decided at trial, not at the motion to dismiss stage.  See 
Ballard
, 90 Ill. App. 3d at 16.  Defendants at trial must prove, by clear and convincing evidence, the existence of the mutual mistake.  
LaSalle National Bank v. 850 De Witt Condominium Association
, 257 Ill. App. 3d 540, 543, 629 N.E.2d 704 (1994).   Defendants’ allegations in count I of their verified amended counterclaim are sufficient to state a cause of action for reformation. 

PAROL EVIDENCE

In support of the trial court's order dismissing defendants’ counterclaim, Schaffner contends the parol evidence rule would bar the evidence showing a mistake, since the Declaration is clear and unambiguous on its face.  That argument ignores the established rule:  "Where mutual mistake or fraud is alleged, parol evidence is admissible to show the true intent and understanding of the parties."  
Ballard
, 90 Ill. App. 3d at 16, citing 
Darst v. Lang
, 367 Ill. 119, 10 N.E.2d 659 (1932).  

The parol evidence rule is no bar to the admission of evidence on the questions of mutual mistake and it is no basis for dismissal of defendants’ counterclaim for reformation.  See 
Brady et al. v. Prairie Material Sales, Inc.
, 190 Ill. App. 3d 571, 578, 546 N.E.2d 802 (1989) (In reformation action, "parol evidence is *** admitted *** to prove by clear and convincing evidence the actual agreement in light of the allegation that the written instrument, in spite of the apparent agreement expressed by its language, fails to express the actual agreement entered into between the parties.")

BONA
 
FIDE
 PURCHASER

In support of the trial court's order dismissing count I of the defendants’ counterclaim, Schaffner contends he was 
a 
bona
 
fide
 purchaser for value and without notice of defendants’ claims when he became an owner of Unit 103.

"A bona fide purchaser of an interest in property takes that interest free and clear from all claims except those of which he has notice."  
LaSalle National Bank v. 850 De Witt Condominium Ass'n
, 211 Ill. App. 3d 712, 718, 570 N.E.2d 606 (1991).  

At issue in determining Schaffner’s status as a 
bona
 
fide
 purchaser is whether he had notice of the defendants’ claims to the two outdoor parking spaces.  "Such notice may be actual or constructive and contemplates the existence of circumstances or facts either known to a prospective purchaser or of which he is chargeable with knowledge which imposes upon such purchaser the duty of inquiry."  
LaSalle National Bank
, 211 Ill. App. 3d at 719, quoting 
Burnex Oil Company v. Floyd
, 106 Ill. App. 2d 16, 21, 245 N.E.2d 539 (1969).

Understandably, both parties have taken opposite sides of this issue and now argue their positions as a matter of law.  We agree with neither.  With respect to the sale of Unit 103 from Jeff Draluc to Schaffner, we find the 
bona
 
fide
 purchaser issue is a fact question and is no basis for dismissal of defendants’ counterclaim for reformation.  See 
LaSalle National Bank
, 211 Ill. App. 3d at 719.

We hold the trial court incorrectly dismissed count I of defendants’ verified amended counterclaim, the reformation count.  CONCLUSION

The orders granting plaintiff's motion for judgment on the pleadings and dismissal of count II of defendants' counterclaim are affirmed, the granting of plaintiff's motion to dismiss count I of defendants' verified amended counterclaim is reversed, and the cause is remanded for further proceedings.

Affirmed in part, reversed in part and remanded.

CERDA, and BURKE, JJ., concur.

FOOTNOTES
1: We note Schaffner says he has owned Unit 103 since 1997.