2025 IL App (1st) 241772-U

SECOND DIVISION
August 19, 2025

No. 1-24-1772

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| RIVER NORTH PARTNERS HOLDINGS, LLC, a Delaware Limited Liability Company, | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | |
| v. | |
| MUSEUM OF BROADCAST COMMUNICATIONS, FH KINZIE STATE III, LLC, FH KINZIE STATE IV, LLC, FH KINZIE STATE V, LLC, DBR INVESTMENTS, CO., FH KINZIE STATE HOLDINGS, LLC and WINTRUST BANK, N.A., | Nos. 20 CH 004142 and 20 L 5857 (Cons.) |
| Defendants, | |
| (FH Kinzie State III, LLC, FH Kinzie State IV, LLC, and FH Kinzie State V, LLC, Defendants-Appellants). | Honorable Clare J. Quish, Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Van Tine and Justice McBride concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm the trial court's order granting summary judgment to plaintiff. The special amendment to the condominium declaration made unilaterally by the defendant-developers after the condominium conversion that permitted defendants to sell the air rights over the property, was not a correction of a clerical or scrivener's error, but a substantive change; therefore the special amendment is invalid.

¶ 2     Plaintiff, a commercial condominium owner, filed this case seeking a declaratory judgment. In its pleadings, plaintiff asserted that a special amendment to the condominium declaration enacted and recorded by one of the defendants is invalid and should be held void. The special amendment was intended to demonstrate that the section of the condominium declaration giving defendant the exclusive right to construct a rooftop deck or rooftop gathering place was also intended to endow defendant with exclusive rights over the full bundle of the building's air rights. The trial court found the special amendment to be invalid and entered a declaratory judgment voiding the special amendment. The other defendants, the parties who purchased the condominiums and the building's air rights from the defendant who recorded the special amendment, appeal the trial court's judgment voiding the special amendment. For the following reasons, we affirm.

¶ 3                                BACKGROUND

¶ 4     On March 13, 2003, defendant the Museum of Broadcast Communications acquired title to the real property located at 9 West Kinzie/360 North State Street in Chicago. At the time the Museum purchased the property, the property was improved with a parking garage. The Museum converted the parking garage into a four-story commercial building. After encountering financial issues due to redeveloping the property, the Museum decided to form a commercial condominium association in order to sell certain areas of the building while retaining ownership of others.

¶ 5     In 2012, plaintiff River North Partners Holdings, LLC purchased the first-floor commercial space in the building. The first-floor commercial space was designated as Unit 1 of the condominium and the unit encompassed a 37.25945% ownership interest. River North Partners and the Museum negotiated the terms of the condominium declaration, and the

declaration was recorded at the same time as the deed vesting River North Partners with title to Unit 1. The condominium consists of four additional units and the Museum retained ownership of Units 2, 3, 4, and 5. River North Partners leases Unit 1 to STK Restaurants which operates a steakhouse on the property.

¶ 6    In 2019, the Museum listed the two upper floors of the building for sale. Those two upper floors contain Units 3, 4, and 5 of the condominium. The Museum marketed the three condominiums for sale, and it also offered the building's air rights as part of the deal. Fern Hill Fund Investors I, LLC agreed to purchase the three upper condominiums and the building's air rights for $6,000,000. Three separate limited liability companies were formed and FH Kinzie State III, LLC took title to Unit 3, FH Kinzie State IV, LLC took title to Unit 4, and FH Kinzie State V, LLC took title to Unit 5.

¶ 7    At the closing of the sale of the units, the Museum executed a special amendment to the condominium declaration. The special amendment was executed by the Museum under its authority as the developer and declarant, and the Museum sought to make a "correction" to the declaration with the special amendment. The special amendment provides that the Museum intended in the declaration to reserve its ownership of the airspace above the property in the section in which it reserved for itself the rooftop development rights. The Museum included in the special amendment that the declaration contained "an error" because it only expressly reserved for the Museum the right to develop "on the Building roof," but it was supposed to reserve for the Museum the right to develop the "air space on and above the Building roof with no upper boundary."

¶ 8    Upon learning that the Museum had sold the air rights to the FH Kinzie defendants, River North Partners objected to the special amendment's validity. River North Partners demanded that

the FH Kinzie defendants rescind the recording that evidenced their ownership of the building's air rights. When the FH Kinzie defendants refused to rescind the recording, River North Partners filed this suit for a declaratory judgment seeking a declaration that the special amendment was invalid and, therefore, void. River North Partners later filed an amended complaint, and the Museum answered the amended complaint and included a counterclaim seeking reformation of the declaration to correspond with the language of the special amendment.

¶ 9    Under the original, unamended condominium declaration, the Museum, as Developer, reserved for itself the "Rooftop Development Rights" in section 4.3(i) of the declaration.

> "(i) Rooftop Development Rights. To and for the benefit of the Developer, the Developer hereby reserves to itself (i) the exclusive right to install, construct and develop on the Building roof (or portions thereof) rooftop deck space, rooftop facilities, rooftop gathering space and other improvements (including, without limitation, rooftop terrace and deck areas, vertical transportation to the Building roof, stairways to and from the Building roof, etc.) and (ii) the exclusive rights to any and all revenues from the sale, conveyance, transfer, lease or other demise of any such rooftop rights, and such rights shall be assignable by the Developer (in the sole and exclusive discretion of Developer) to other Unit Owners and their Occupants by written instrument executed by Developer. Any such rooftop improvements (1) shall constitute "additions, alterations and improvements" pursuant to Section 4.8 hereof and, accordingly, shall comply with all requirements of Section 4.8 hereof, and (2) shall be constructed in a location and in a manner that shall not unreasonably

diminish or preclude the exercise of the other rooftop rights hereunder including, without limitation, Rooftop Communications Facilities and rooftop air handling equipment. Notwithstanding anything to the contrary contained herein, any such rooftop developments shall comply with all applicable laws, codes and ordinances."

In the special amendment, the Museum made a "correction" to this provision of the declaration providing that "rooftop development rights" was intended to include all the airspace above the building.

"Corrections. Pursuant to Section 4.3(i) of the Condominium Declaration, the Developer and Declarant reserved to itself certain rights as described in such Section (the 'Rooftop Development Rights'). Although the intent of Section 4.3(i) of the Condominium Declaration was that there was to be no upper boundary to the area to which the Rooftop Development Rights are applicable and in which improvements could be installed, constructed, and developed on the Building roof, Section 4.3(i) contained an error by failing to include language confirming that. Pursuant to the right and power reserved to the Developer and Declarant pursuant to Section 13.11 of the Condominium Declaration [the Museum], as the Developer and Declarant, hereby amends Section 4.3(i) by replacing the words 'on the Building roof (or portions thereof)' in the first sentence of 4.3(i) of the Condominium Declaration with 'within that portion of the Property consisting of air space on and above the Building roof with no upper boundary.' "

¶ 10    Under the declaration, the Museum, as Developer, was entitled to unilaterally make a special amendment to bring the declaration into compliance with the governing statute or to correct clerical, typographical, or similar errors in the declaration. In such a situation, the Museum, as Developer, was entitled to consent to the special amendment on behalf of the other unit owners.

> "Developer and Declarant reserve the right and power to record a special amendment ('Special Amendment') to this Declaration at any time and from time to time which amends this Declaration (i) to bring this Declaration into compliance with the Act, or (ii) to correct clerical or typographical or similar errors in this Declaration or any Exhibit hereto or any supplement or amendment thereto. In furtherance of the foregoing a power coupled with an interest is hereby reserved and granted to the Developer or Declarant to vote in favor of, make or consent to a Special Amendment on behalf of each Unit Owner as proxy or attorney-in-fact as the case may be."

¶ 11    River North Partners claims that the Museum lacked the authority to execute the relevant special amendment. River North Partners contends that the condominium's air space is owned by the condominium association and all its unit owners. The FH Kinzie defendants meanwhile contend that, under the terms of the condominium declaration, the Museum had the authority to consent to the special amendment on River North Partners' behalf. Thus, according to the FH Kinzie defendants, no assent from River North Partners was needed for it to execute the special amendment and subsequently convey the building's air rights.

¶ 12     River North Partners moved for summary judgment on Counts I and III of its complaint for declaratory relief and on the Museum's counterclaim. The trial court granted River North

Partners' motion for summary judgment on Count I of its amended complaint and did not address Count III as Count I provided complete relief to the plaintiff. The trial court also entered judgment in River North Partners' favor against the Museum's counterclaim. The FH Kinzie defendants now appeal the trial court's judgment.

¶ 13                                    ANALYSIS

¶ 14    Defendants, the FH Kinzie companies, argue that the trial court erred when it granted summary judgment to plaintiff, River North Partners. Summary judgment is appropriate when the pleadings, depositions, admissions, and affidavits, viewed in a light most favorable to the nonmovant, fail to establish that a genuine issue of material fact exists, thereby entitling the moving party to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022); *Fox v. Seiden*, 2016 IL App (1st) 141984, ¶ 12. If disputes as to material facts exist or if reasonable minds may differ with respect to the inferences drawn from the evidence, summary judgment may not be granted. *Associated Underwriters of America Agency, Inc. v. McCarthy*, 356 Ill. App. 3d 1010, 1016-17 (2005). Summary judgment is encouraged as an expeditious manner of disposing of a lawsuit, but it should only be utilized when a party's right to a judgment is clear and free from doubt. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). We review a trial court's decision to grant summary judgment *de novo. Illinois Tool Works Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, ¶ 8.

¶ 15    This appeal requires us to interpret a condominium declaration to resolve a dispute between two unit owners. When a controversy regarding the rights of a condominium unit owner arises, courts examine the relevant provisions of the Condominium Property Act (765 ILCS 605/1 *et seq*. (West 2022)) along with the declaration and bylaws of the condominium and construe them as a whole. *Goldberg v. Astor Plaza Condo. Ass'n*, 2012 IL App (1st) 110620,

¶ 47. A condominium declaration is a contract between the association and the unit owners, and it must be interpreted in the same manner as other contracts. *Palm v. 2800 Lake Shore Drive*, 2014 IL App (1st) 111290, ¶ 75. The primary objective in construing a contract is to ascertain the intent of the parties and give effect to that intent. *United Airlines, Inc. v. City of Chicago*, 116 Ill. 2d 311, 318 (1987). A contract must be given a fair and reasonable construction based upon a consideration of all of its language and provisions. *Shelton v. Andres*, 106 Ill. 2d 153, 159 (1985).

¶ 16    Defendants contend that the condominium declaration authorized the Museum to amend the declaration. Section 13.11 of the declaration gives the Museum, as the Declarant and Developer, the right to make and record a special amendment under certain circumstances.

> "Developer and Declarant reserve the right and power to record a special amendment ('Special Amendment') to this Declaration at any time and from time to time which amends this Declaration (i) to bring this Declaration into compliance with the [Condominium Property] Act, or (ii) to correct clerical or typographical or similar errors in this Declaration ***."

¶ 17    Prior to the special amendment being executed, section 4.3(i) of the declaration reserved for the Museum the building's rooftop development rights.

> "(i) Rooftop Development Rights. To and for the benefit of the Developer, the Developer hereby reserves to itself (i) the exclusive right to install, construct and develop *on the Building roof* (or portions thereof) rooftop deck space, rooftop facilities, rooftop gathering space and other improvements (including, without limitation, rooftop terrace and deck areas, vertical transportation to the Building roof, stairways to and from the Building roof, etc.) *** (emphasis added)."

After the special amendment, section 4.3(i) of the declaration is worded more broadly to include the right to develop on *and above* the building roof.

> "(i) Rooftop Development Rights. To and for the benefit of the Developer, the Developer hereby reserves to itself (i) the exclusive right and easement to install, construct and develop <u>within that portion of the Property consisting of air space on and above the Building roof with no upper boundary</u> ~~on the Building roof (or portions thereof)~~ rooftop deck space, rooftop facilities, rooftop gathering space and other improvements (including, without limitation, rooftop terrace and deck areas, vertical transportation to the Building roof, stairways to and from the Building roof, etc.) ***"

¶ 18    Defendants contend that the Museum "possessed the right to amend the Declaration to correct a clerical, typographical, or similar error in the Declaration" and that it acted in accordance with such authority when it recorded the relevant special amendment. Defendants suggest that the inclusion of the phrase "on the roof" in the original, unamended declaration is incongruent with the remaining provisions of that section and was "a scrivener's error." Defendants argue that the intention of the original declaration was to give the Museum the right to develop the airspace as exemplified by the fact that anything installed on the roof would necessarily require the use of the building's airspace as well. According to defendants, the use of a special amendment was appropriate to reconcile the inconsistencies in the declaration's provisions.

¶ 19    The trial court found defendants' proffered interpretation of the contract to be unreasonable. Defendants did not argue in the trial court, nor do they here, that the special amendment could be justified under their reserved power to bring the declaration into

compliance with the Condominium Property Act. Thus, under the declaration, a special amendment would only be proper in this case "to correct clerical or typographical or similar errors in this Declaration." Clearly the omission of the building's air rights did not constitute a typographical error, and defendants do not attempt to make such an argument. Rather, defendants' argument focuses on the notion that the omission of "air rights" from the rooftop development section was a clerical error or scrivener's error.

¶ 20    This court has previously looked to Black's Law Dictionary to state the definition of a clerical error: "*An error resulting from a minor mistake or inadvertence,* esp. in writing or copying something on the record, and not from judicial reasoning or determination." *Schaffner v. 514 W. Grant Place Condo. Ass'n, Inc.*, 324 Ill. App. 3d 1033, 1042 (2001) (citing Black's Law Dictionary 1349 (7th ed. 1999) (emphasis in original)). The dictionary definition goes on to provide examples of some "clerical errors," such as "omitting an appendix from a document; typing an incorrect number; mistranscribing a word; and failing to log a call." *Id*.

¶ 21    In this case, the alleged "error" was not merely clerical in nature. Defendants argue that the phrase "on the Building roof" in the "Rooftop Development Rights" section of the declaration is incongruent with the rest of the section. However, the inclusion of the phrase "on the Building roof" is perfectly consistent with a reasonable interpretation of this section of the declaration. The type of development contemplated by this section of the declaration is rooftop gathering areas, such as a rooftop deck or a rooftop terrace, and a means of ingress and egress to accommodate such a rooftop development. It is fitting that the right to construct one of those structures would require the right to build "on the Building roof" as the declaration solely sets forth. The full bundle of air rights for a property is a different matter altogether. In Illinois, a

written contract is presumed to include all material terms agreed upon by the parties. *K's Merchandise Mart, Inc. v. Northgate Ltd. P'ship*, 359 Ill. App. 3d 1137, 1143 (2005).

¶ 22    The special amendment at issue here makes a wholesale change to the meaning of the original provision. A clerical error is a mistake that is mechanical or technical. *Fifth Third Bank, N.A. v. Rosen*, 2011 IL App (1st) 093533, ¶ 32. A mistake that is the result of the exercise of professional judgment or a misapprehension of the law or the facts does not qualify as a clerical error. *Id*. at ¶¶ 32-33. The alleged "error" here is beyond any mechanical or technical mistake. In fact, when the person who drafted the declaration was deposed, he testified to his employment of professional judgment in drafting this section of the declaration, and he testified that he did not believe any error had been made at all in this section, technical or otherwise.

¶ 23    The circumstances of the case lend extra support to the conclusion that the rooftop development rights section of the declaration was not originally intended to include the air space. At the time the Museum recorded the special amendment, it simultaneously recorded a new plat for the property to depict the rights addressed by the special amendment. More than a mere correction to the words used in the declaration was required to effectuate the Museum's attempted action. If the failure to include air rights was just a typing error in the declaration, at least the original plat would have conveyed the intention. Instead, the Museum felt the need to record a new plat containing an entirely new depiction of the roof and explain that the rooftop is a limited common element assigned to one of defendants' units and has no upper boundary.

¶ 24    As plaintiff points out, the declaration permitted the Museum to install a rooftop deck or similar structure but did not include the right to construct additional stories on the building or sell the entirety of the airspace to a third party for unrestricted development. The special amendment was not meant to merely remedy some kind of drafting error but instead was intended to create a

substantive right for the Museum that did not previously exist. The declaration does not authorize the developer to make the relevant change to the declaration through a unilateral special amendment.

¶ 25     Defendants contend that a different section of the declaration, section 13.6, establishes that the Museum had the authority to make substantive changes to the declaration. Defendants argue that the trial court erred when it focused on the notion that, under the declaration, a special amendment could only be used for clerical type errors and could not be used for anything substantive. According to defendants, section 13.6 permits the Museum to make changes to the boundaries of units and the allocation of percentages of ownership by special amendment, so it permits substantive changes by such means. This argument is forfeited as it is raised for the first time on appeal. See *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 92 (2010) (arguments made for the first time on appeal are forfeited). Regardless of forfeiture, we disagree with defendants' reading of this section insofar as they contend this section somehow supports a conclusion that the Museum was entitled to use a special amendment outside of either bringing the declaration into compliance with the Act or correcting a typographical or clerical error. As we have explained, the special amendment did not merely correct a clerical-type error and, therefore, defendants' argument fails.

¶ 26     We find the primary case cited by plaintiff, *Schaffner v. 514 W. Grant Place Condo. Ass'n, Inc.*, 324 Ill. App. 3d 1033, 1043 (2001), to be instructive and persuasive. In *Schaffner*, a three-unit condominium had two outdoor parking spaces. The condominium declaration was silent about the right to those parking spaces. *Id*. at 1036. The recorded plat for the condominium likewise did not address the parking spaces. *Id*. Two of the unit owners contended that they had reached an agreement with the developer of the condominium that the two outdoor parking

spaces would be classified as limited common elements of their respective units, while the owner of the third unit would have no designated outdoor parking space. *Id*. Because the declaration was silent on the issue, the two owners claiming the parking spaces convened a meeting and voted to amend the declaration to expressly state that the parking spaces were limited common elements appurtenant to their respective units. *Id*. at 1037.

¶ 27     The unit owner who was being denied an outdoor parking space filed suit seeking a declaration that the amendment was invalid. *Id*. The trial court agreed with the plaintiff. *Id*. Like the defendants here, the defendants in *Schaffner* asserted that the omission of the parking spaces was just a clerical error that they could amend. *Id*. at 1039-40. On appeal, we explained that the failure to address the parking spaces in the declaration was not a mere clerical error. *Id*. at 1042. "Whatever the reason for omitting the outdoor parking spaces from the Declaration, we cannot see how it was caused by a scrivener's error[.] *** Omission of the only two outdoor parking spaces in the Development cannot be considered a 'minor mistake or inadvertence.' " *Id*. Thus, we found the amendment to be "invalid and of no force and effect." *Id*. at 1043; see also *6-8 W. Maple Condo. Ass'n v. Karluk*, 2012 IL App (1st) 111330-U, ¶ 36 (unpublished order under S. Ct. R. 23) (May 10, 2012). The same result is appropriate in this case.

¶ 28     Defendants principally rely on two cases in an effort to demonstrate that a clerical error may be found when there is some inconsistency or incongruity in a provision that needs to be reconciled (citing *Dauderman v. Dauderman*, 130 Ill. App. 2d 807, 810 (1970); *Metropolitan Life Ins. Co. v. Henriksen*, 6 Ill. App. 2d 127, 134 (1955)). Neither case is particularly persuasive to the issue in this case in light of the facts at hand.

¶ 29     In *Dauderman*, a divorce judgment listed the alimony payment to the former spouse as $400, with the goal of allowing the plaintiff to have the opportunity to maintain the standard of

living to which she was accustomed. *Dauderman*, 130 Ill. App. 2d at 808. More than 30 days after the judgment was entered, the plaintiff moved to have the judgment amended to add "per month" after the $400, so that the amount could not possibly be construed as a one-time payment. *Id*. The trial court granted the motion, and we affirmed because a $400 monthly payment was clearly intended to be part of the judgment and the failure to include "per month" in the order was a classic clerical error that the court could correct even after losing jurisdiction. *Id*. at 808, 810.

¶ 30    In *Henriksen*, a 12-year-old boy applied for a life insurance policy. *Henriksen*, 6 Ill. App. 2d at 130. The policy erroneously gave the insured the option at the end of 20 years to receive an annual annuity of $1,051 instead of the intended $10.51. *Id*. at 131. The insurer brought an action to reform the contract. *Id*. at 131-32. We agreed that the insurer was entitled to reformation. *Id*. at 135. We explained that the record left "no doubt that one of the plaintiff's clerks, in copying the modes of settlement described on the rate card onto the policy brief, left out the decimal point in the third settlement, thus making it read $1051 instead of $10.51." *Id*.

¶ 31    Both *Dauderman* and *Henriksen* are instructive of clerical errors that do not rise to the level of omission defendants sought to "correct" in the declaration in this case. The situation in *Schaffner* is far more similar to the facts and issues presented here and the analysis and reasoning in *Schaffner* is compelling for resolving this case. The trial court properly granted summary judgment to plaintiff on Count I of its amended complaint and the court properly declared the special amendment to be void.

¶ 32    Like the trial court, we need not address the parties' arguments with regard to whether plaintiff was entitled to judgment on Count III of its amended complaint. Because our decision

with regard to Count I alone justifies affirming the trial court's order and fully addresses the parties' rights and obligations, we do not reach the parties' remaining arguments.

¶ 33                                      CONCLUSION

¶ 34     Based on the foregoing, we affirm the circuit court's order granting summary judgment in the plaintiff's favor.

¶ 35     Affirmed.